Kyle Steven **WILLIAMS**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 592–93, 593–93.

Court of Criminal Appeals of Texas, En Banc.

Dec. 14, 1994.

---

5. 895 S.W.2d at 358.

William W. Burge, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Mary Lou Keel and David Kiatta, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

A jury found appellant, Kyle Steven Williams, guilty of telephone harassment. *See* Tex.Penal Code § 42.07(a)(2). The trial court assessed appellant's punishment at 90 days jail time and a $500.00 fine, both probated for six months. The Fourteenth Court of Appeals affirmed. *Williams v. State,* 850 S.W.2d 784 (Tex.App.—Houston [14th Dist.] 1993). We granted appellant's petition for discretionary review, pursuant to Texas Rule of Appellate Procedure 200(c)(2), to determine whether the court of appeals erred in holding that the trial court did not abuse its discretion in excluding expert testimony concerning appellant's psychological profile. We now affirm.

On January 30, 1991, Kim DiFrancesco was working at a Whataburger restaurant in northwest Houston when, at approximately 12:55 a.m., she received a telephone call. The caller informed DiFrancesco that "four armed men" were watching the restaurant and that he wanted to give her instructions. The caller subsequently instructed DiFrancesco to perform sexual acts with another Whataburger employee. DiFrancesco and her coworker pretended to comply with the caller's requests. DiFrancesco informed two deputy sheriffs, who were in the restaurant at that time, of the call. The deputies succeeded in tracing the call while DiFrancesco remained on the line with the caller. DiFrancesco later identified the voice of appellant as that of the caller.

On January 30, 1991, at approximately 1:23 a.m., Pam Davis, an employee at another Whataburger restaurant in northwest Houston, received a telephone call. The caller told Davis that two men were going to rob her and shoot her if she did not cooperate with his demands. The caller then proceeded to instruct Davis and another coworker, Roderick Williams (Roderick), to perform sexual acts. The caller spoke with both Davis and Roderick. Both Davis and Roderick later identified the voice of appellant as that of the caller.

At trial, appellant proffered the testimony of Jerome Brown, a clinical psychologist. In appellant's offer of proof, Brown testified as to the psychological profile of the type of person who would make harassing telephone calls of a sexual nature. Brown testified that such an individual is typically passive and avoids open conflict, is confused about his sexuality, is basically hostile, and has a history of impaired relationships with other people. Brown also testified that one who makes harassing telephone calls of a sexual nature does so compulsively and repetitively, and that a single such act would be unlikely.

Brown then testified as to his evaluation of appellant. Brown's evaluation of appellant consisted of a battery of psychological tests and an interview. Brown's conclusion was that appellant was an "overachiever," was "very rule-bound," and was "an extremely moralistic individual." The following exchange then occurred between appellant's trial counsel and Brown:

> Counsel: Did any of these characteristics—are any of these characteristics consistent with the type of personality you were talking about who commits, or typically ... commits this type [of] offense?
>
> Brown: Typically their kind of personality profile would be almost the opposite of that kind of person.

Acting upon the State's objection, the trial court excluded Brown's testimony. The court of appeals affirmed the trial court's ruling, citing Texas Rule of Criminal Evidence 702.[1] The court of appeals opined that Brown's testimony was a "character judgment" and did not constitute specialized knowledge of the type contemplated by Rule 702.

Appellant now argues that Brown's testimony was erroneously excluded because it would have assisted the jury in their determination of whether appellant made the calls. Appellant argues that the instant case is analogous to *Duckett v. State*, 797 S.W.2d 906 (Tex.Crim.App.1990). In *Duckett*, this Court dealt with the admissibility of expert testimo-

ny pertaining to the psychological profile of a child victim of sexual abuse, whereas, as appellant argues, the instant case concerns the admissibility of expert testimony pertaining to the psychological profile of one who makes harassing telephone calls of a sexual nature. Appellant concludes that Brown's testimony should have been admitted pursuant to *Duckett*.

The State argues that Brown's testimony was unnecessary for the jury to determine the facts in issue, in that it was unhelpful, and that therefore the trial court did not abuse its discretion in excluding the testimony under Rule 702. The State argues that the substance of Brown's proffered testimony was not outside the knowledge and experience of the average juror. *See Duckett*, 797 S.W.2d at 914.

In *Duckett*, we held that expert testimony concerning the psychological profile of a victim of child sexual abuse syndrome was admissible under Rule 702. *Id.* In *Duckett*, the victim, a six and one-half year old child, testified to acts of sexual abuse by her uncle. On cross-examination, the defendant brought out a number of inconsistencies between the victim's trial testimony and her pretrial statements concerning the sexual abuse. In rebuttal, the State called a social worker who testified to the common characteristics exhibited by child victims of sexual abuse, such as changing their initial description of the acts of sexual abuse perpetrated against them and indirectly reporting the abuse by complaining of physical ailments in the area of their genitalia. The social worker then applied his generic testimony concerning the common characteristics displayed by child sex abuse victims to the facts of the case by pointing out that the victim in that case had made inconsistent statements about the abuse and had initially reported the sexual abuse by complaining of itching and irritation of her vagina.

Similarly, in *Cohn v. State*, 849 S.W.2d 817 (Tex.Crim.App.1993), we held that expert

---

1. Tex.R.Crim.Evid. 702 states:
   If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

psychological testimony concerning the characteristics commonly displayed by child victims of sexual abuse was admissible. In *Cohn*, a psychologist testified that child victims of sexual abuse often experienced "crying" and "angry" episodes, had problems concentrating in school, and tended to cling to parents or others to get reassurance. A number of other witnesses testified that the victims in *Cohn*, both young children, were "withdrawn, fearful, and 'clingy'" after the alleged acts of abuse had been committed against them.

In *Duckett*, the expert applied his generic testimony concerning the common characteristics displayed by victims of child sexual abuse syndrome to the facts of that case, by pointing out that the victim in that case had made inconsistent statements about the sexual abuse inflicted upon her and had initially reported the abuse by complaining of irritation of her genitalia. Likewise, in *Cohn*, witnesses other than the expert testified that the child victims in that case displayed some of the characteristics that the expert had testified were commonly displayed by child victims of sexual abuse, thereby linking the expert's generic testimony to the facts of that case.

■ In the instant case, we note that the proffered testimony provided by Brown was potentially helpful under Rule 702, pursuant to *Duckett*. Such testimony, concerning the psychological profile of an offender who makes harassing telephone calls of a sexual nature, might assist the jury in determining a fact in issue, i.e., whether appellant made the telephone calls to the Whataburger employees. However, to be helpful, such testimony must be applied, or connected to the facts of the individual case. *See Duckett*, 797 S.W.2d at 915; *Cohn v. State*, 849 S.W.2d 817.

In the instant case, Brown's testimony was not helpful to the jury, since he did not specifically apply his psychological profile testimony to actual characteristics possessed by appellant. Brown merely testified that appellant was an "overachiever" and "extremely moralistic;" he did not specifically say whether appellant possessed any of the typical characteristics of an offender who

makes harassing telephone calls of a sexual nature, e.g., a tendency to avoid direct conflict, confusion about his sexuality, excessive hostility, and/or a history of impaired relationships. In other words, Brown did not connect his generic testimony concerning the psychological profile of such an offender to the facts of the case.

We believe the instant case is similar to *Pierce v. State*, 777 S.W.2d 399 (Tex.Crim. App.1989). In *Pierce*, we held that the trial court did not abuse its discretion in excluding expert testimony regarding the unreliability of eyewitness identification. We reasoned that the jury was inherently able to determine the credibility of an eyewitness, and that expert testimony concerning eyewitness identification was therefore not helpful to the jury. We also noted in *Pierce* that the expert's failure to connect his abstract testimony concerning eyewitness identification to the actual testimony provided by the eyewitnesses in that case contributed to our determination that the expert's testimony was unhelpful. *Id.* at 415–16.

■ Expert testimony should be admitted only when it is helpful to the jury. *See Yount v. State*, 872 S.W.2d 706 (Tex.Crim. App.1993). As we stated in *Duckett*, "[t]he use of expert testimony must be limited to situations in which the expert's knowledge and experience on a relevant issue are beyond that of an average juror." *Duckett*, 797 S.W.2d at 914. It is not sufficient that the expert merely testify in a conclusory manner, as in the instant case, that the defendant is not the type of person who would make obscene, threatening telephone calls.

■ The substance of Brown's proffered testimony in the instant case, that appellant was basically a moral person, was not outside the knowledge and experience of the average juror. Additionally, Brown's testimony concerning appellant's personal characteristics, i.e. being an "overachiever," etc., and his testimony concerning the profile of a person who makes harassing telephone calls of a sexual nature were not sufficiently related. To that extent, Brown's statement, "Typically their kind of personality profile would be almost opposite of that kind of person," was

inadequate to connect his testimony concerning the profile to his testimony concerning appellant. Therefore, Brown's testimony was properly excluded.

We hold that the trial court did not abuse its discretion in excluding Brown's testimony, and that the court of appeals did not err in upholding the trial court's decision. The judgment of the court of appeals is AFFIRMED.

MILLER, J., dissents.

CLINTON, Judge, dissenting on appellant's petition for discretionary review.

The issue in this cause, as framed by the parties in their briefs on appeal and resolved by the court of appeals, is whether it was within the discretion of the trial court to exclude the proffered testimony of Dr. Jerome Brown, a psychologist, at the guilt/innocence stage of trial, on the ground that it would not "assist the trier of fact to understand the evidence or to determine a fact in issue[.]" Tex.R.Cr.Evid., Rule 702.[1] The court of appeals ruled the trial court was within its discretion because Dr. Brown's testimony was no more than a "kind of character judgment [that] does not constitute highly specialized knowledge, but is the type of assessment that lay people make every day." *Williams v. State*, 850 S.W.2d 784, at 788 (Tex.App.—Houston [14th] 1993).

The Court today takes a different tack than did the court of appeals. Today the Court holds that Dr. Brown's testimony did not assist the jury because he did not adequately relate his evaluation of appellant's personality to what he identified as the personality profile of the typical perpetrator of the kind of offense at issue here. Maj. op. at 366–367. The Court seems implicitly to reject the court of appeals' holding that expert testimony whether an alleged offender meets a psychological profile for such offenders

does not "assist" the factfinder, and is therefore subject to exclusion under Rule 702. I, too, would reject that holding, albeit expressly. I strongly disagree, however, with the Court's conclusion that Dr. Brown's testimony in appellant's bill of exception was somehow inadequate to show that appellant does not meet the profile for the type of personality that would commit the offense at issue here.

*I.*

When appellant called Dr. Brown to the witness stand, the following colloquy ensued:

"Q. At my request did you have occasion to do a psychological profile of Kyle Williams?

A. I did. I saw Mr. Williams on June 24th of this year for that purpose.

Q. And have you seen him for any other purpose?

A. No, I haven't.

Q. What types of test did you perform?

A. Evaluation.

Q. What did your evaluation consist of?

[PROSECUTOR]: Your Honor, I'm going to object at this time. This is going to be improper character evidence.

THE COURT: Sustain the objection.

[DEFENSE COUNSEL]: To the type of evaluation, Judge?

THE COURT: I sustain his objection. The objection was improper character evidence. I agree. I sustain the objection.

Q. (By [DEFENSE COUNSEL]) After performing the evaluation, were you able to arrive at any conclusions as to the psychological profile of Kyle Williams?

[PROSECUTOR]: Objection, Your Honor, improper character evidence.

THE COURT: Sustained. Do you want to approach the Bench please?

---

1. As will be seen, the State did not object at trial that Dr. Brown's testimony would not "assist" the jury, and was therefore objectionable under Rule 702. Instead, the prosecutor objected that his testimony comprised objectionable character evidence. On appeal, however, appellant ignored the State's trial objection, and argued the trial court erred to exclude the evidence because it was admissible as expert testimony. The State

seems to have abandoned its trial objection, for in its reply brief it argued responsively that the testimony of Dr. Brown was not admissible under Rule 702 because it would not "assist" the jury. The court of appeals addressed the issue as thus framed, and therefore, notwithstanding the State's trial objection, the case comes to this Court on discretionary review in that posture.

(Off-the-record discussion at the Bench.)

THE COURT: Take the jury out please.

(Jury out.)

THE COURT: Let's take a five-minute break before we get into that.

(Brief recess.)

THE COURT: Let's go ahead and get started outside the presence of the jury. Let's develop this testimony.

DIRECT EXAMINATION (outside presence of jury)

BY [DEFENSE COUNSEL]:

Q. The purpose of your evaluation of Kyle Williams was what?

A. Essentially to determine what kind of person he was, in view of the kind of people who we found are typical with regard to this kind of offense.

Q. And 'this kind of offense,' how do you know what the general allegations are against Kyle Williams?

A. Well, he told me, and he also told me during the referral phone call.

Q. So when you say 'this kind of offense,' what do you mean?

A. I'm sorry. I also have information from the offense report that was sent to me, synopsis.

Q. When you say 'this kind of offense,' what do you mean?

A. Talking about the obscene telephone call with threats, implications of bodily harm if the person does not carry out what they say they should do.

Q. And you've actually been involved in treating people who have done these kind of phone calls?

A. Yes.

Q. Do such people fit a certain psychological profile?

A. Typically they do. They show certain characteristics that are quite consistent with this kind of act. In other words, the act is psychologically consistent with the kind of people these people are.

Q. Which is what?

A. Well, the thing that we've seen with all of these individuals essentially is that they have conflicts about aggression. They're individuals who are typically passive in the face of open conflict. This is why they do something behind the scenes or out of the face of the actual victim. They are people who have conflicts about their own sexuality. They are people who are basically hostile people who have a history of impaired relationships with other people, especially in terms of their inability to handle direct conflict.

Q. Are you through? I didn't mean—

A. The other thing is that the pattern that they show is compulsive and repetitive. In other words, this is not a single act. This is something that happens over and over again with these people because they derive a certain pleasure from it. This is also an act that's basically hostile in motivation. It's not sexual in motivation.

Q. And what kind of evaluation did you do? What did your evaluation consist of?

A. We did the evaluation in two parts, the clinical interview and administration of psychological testing.

Q. And what kind of psychological testing did you use?

A. Well, the psychological battery that I use is—the one I typically use with this kind of evaluation, it consists of the M.M.P.I., the Rorschach Test, IQ estimate called Shipley's Scale, 16 personalities, Moony Problem Checklist, and an instrument called the Firo–B, F-i-r-o, dash, B.

Q. Were you able to reach any conclusion about the psychological profile of Kyle Williams after administering the tests and doing the clinical interview?

A. Yes, there was very clear evidence of the kind of personality he has, yes.

Q. And what is that?

A. Well, the important aspects of the profile revealed Kyle to be an individual who is an overachiever. He's an individual that expects more of himself than he's actually capable of. He's an individual who is very rule bound or concerned about doing the things that he does the right way or the way the rules say to do it. He's extremely concerned about how he looks to other people and the kind of impression he makes. It's extremely important that he

look good and appears good to other people. He is also an extremely moralistic individual who, again is probably more concerned about doing things the right way or the moral way than the average individual. If anything, he's too uptight.

Q. Did any of these characteristics—Are any of these characteristics consistent with the type personality you were talking about who commits, or typically type personality who commits this type of offense?

A. Typically their kind of personality profile would be almost opposite of that kind of person."

The State reiterated its objection that this testimony constituted "improper character evidence." The trial judge excluded it, opining simply that "I don't think it's admissible."

## II.

Even now, the State does not attack the empirical foundation for Dr. Brown's testimony. That is to say, there is no challenge to the psychological principles by which Dr. Brown purports to be able to conclude that there is a particular profile that obscene telephonic harassment offenders generally meet, and that appellant does not fit that general profile. See *Kelly v. State*, 824 S.W.2d 568 (Tex.Cr.App.1992). Nor does the State argue that the underlying facts and data from which Dr. Brown derived his opinion were not sufficient. Tex.R.Cr.Evid., Rule 705(c). Thus, the court of appeals did not hold that Dr. Brown's testimony was objectionable because lacking in empirical support.[2] Instead, the court of appeals held that his opinion was simply a "character judgment" that does not require expertise to make; "the type ... that lay people make every day." *Williams v. State*, supra, at 788. The Court today agrees, at least, that Dr. Brown's testimony "that appellant was basically a moral person, was not outside the

knowledge and experience of the average juror." Maj. op. at 366. Nevertheless, the Court appears to affirm the court of appeals on a different basis, *viz:* that in any event Dr. Brown never testified "sufficiently" whether appellant fit the profile for obscene telephone harassers. I disagree with both conclusions.

### A.

Under the rules, an accused may broach the subject whether his guilt for the alleged offense would be inconsistent with his character. Tex.R.Cr.Evid., Rule 404(a)(1).[3] Presumably, then, he would have been allowed to present lay testimony in this cause that his general character was inconsistent with the conclusion that he committed the instant offense. That does not mean, however, that opinion testimony from a psychologist, based upon his avowed "specialized knowledge" about the type of character that would commit a particular offense, and, from specialized testing, an accused's own character, could not "assist the trier of fact ... to determine a fact in issue" in a way that lay testimony could not.

Assuming, because it is not assailed here, that Dr. Brown's testimony was based upon sound psychological principles and supported by sufficient underlying facts and data, it contributed to the jury's consideration of facts in issue in two ways that lay testimony could not have. First, a lay witness will have no empirically fashioned "profile" of offenders against which to measure his personal assessment of the accused's character. In that respect, a clinical psychologist's opinion is more informed, and concomitantly more probative. Second, that "lay people" make character judgments "every day" does not mean they make them on the same principled basis that a trained clinical psychologist does. Thus, the perception of the accused's charac-

---

2. I do not mean to suggest that such challenges to the empirical foundation of Dr. Brown's testimony would have been well taken on the record before us. My point is simply that no such challenges were made here, and therefore that issue is not before us in the instant cause.

3. The State did not specifically argue at trial, or on appeal, that Dr. Brown was an incompetent character witness, in that he had not been "fa-

miliar with ... the underlying facts or information upon which [his] opinion is based, prior to the day of the offense." Tex.R.Cr.Evid., Rule 405. In any event, the court of appeals did not hold that Dr. Brown's testimony was excludable on the basis of the State's objection at trial, that it constituted improper character evidence. See n. 1, *ante.*

ter that the psychologist compares to his profile is less anecdotal, more derivative of common observation passed through the sieve of scientific method. To that extent, both his judgment of the accused's character, and his comparison of it to the profile, may be more reliable.

Absent the psychologist's testimony, the lay jury is no better equipped than is the lay witness to assess the accused's propensity for the crime he is accused of. In *Pierce v. State*, 777 S.W.2d 399 (Tex.Cr.App.1989), we made it clear that expert testimony should be admitted whenever it helps the jury "to determine intelligently and to the best possible degree the particular issue[.]" *Id.*, at 414, quoting the advisory committee note following Fed.R.Evid. 702. See also 2 Goode, Wellborn & Sharlot, Texas Practice: Texas Rules of Evidence: Civil and Criminal § 702.2 (1993), at 16. Again, assuming the bases for Dr. Brown's testimony were sound—an issue not before us in this cause— his testimony would surely have "assisted" the jury to the extent it would have helped them evaluate "to the best possible degree" whether appellant's guilt for the charged offense is consistent with his character. The court of appeals erred to conclude otherwise.

Today the Court eschews the court of appeals' faulty reasoning. To the extent this constitutes a rejection of that court's analysis, I concur.

### B.

Instead, the Court affirms the court of appeals' judgment on the alternative ground that Dr. Brown was not explicit enough in the bill of exception in his testimony that appellant does not fit the character profile for perpetrators of the instant offense. I do not understand in what respect the testimony was deficient. Dr. Brown enumerated a handful of character traits that his testing revealed in appellant, and opined, albeit awkwardly, that they were "almost the opposite" of what one would expect to find among those who typically commit the kind of offense appellant was accused of committing.

How the profile and appellant's particular character traits "were not sufficiently related" by this testimony is not self-evident. Maj. op. at 366. Nor does the Court explain it.

The Court does opine that "[i]t is not sufficient that the expert merely testify in a conclusory manner, as in the instant case, that the defendant is not the type of person who would make obscene, threatening telephone calls." Maj. op. at 366. The Court cites no authority for this proposition. That is understandable, however, since it is at odds with the scheme for admission of expert testimony contemplated by Article VII of the Rules of Criminal Evidence. While it may not be a good idea from an adversarial standpoint to present expert opinion testimony in such a clipped fashion, it is clearly permissible to do so under Tex.R.Cr.Evid., Rule 705(a). See 2 Goode, Wellborn & Sharlot, Texas Practice: Texas Rules of Evidence: Civil and Criminal § 705.2 (1993), at 69. The proponent may adduce such "bare-bone" expert opinion testimony, *id.*, at 68, and thus "shift[ ] the burden of probing the bases of the expert's opinion to the cross-examiner." *Id.*, at 69. That is the reason Rule 705 offers the opponent of such evidence the opportunity to voir dire the expert witness; to avoid ambush on cross-examination by testing the bases for his opinion outside the presence of the jury. *Id.*, at 70–71. The opponent may choose not to avail himself of the opportunity to test the bases of the expert's testimony under these provisions. But that would not deprive the expert's opinion of its usefulness. Clearly, in contemplation of Rule 705, an opinion that is "conclusory" may still "assist" the jury for purposes of Rule 702.

Moreover, I do not agree that Dr. Brown's opinion was "conclusory." He testified his opinion as to the typical characteristics of a person who makes obscene and threatening telephone calls was based on his experience treating an undisclosed number of such offenders. His opinion of appellant's character was based on a clinical interview and a battery of psychological tests.[4] The bases for

---

4. We have never labeled "conclusory" expert psychological testimony based upon virtually identical criteria to the effect that capital murder defendants will likely constitute a future danger to society.

his opinion were thus reasonably well developed. We must keep in mind that Dr. Brown was testifying for purposes of a bill of exception. Even if the law required the proponent of expert opinion testimony to fully develop the basis for his opinion as a predicate to admissibility, it would not necessarily follow that a bill of exception should have to be so exhaustive to demonstrate that an excluded opinion would have "assisted" the jury. In short, I cannot find a good reason to hold that Dr. Brown's testimony in this cause did not "sufficiently relate" appellant's character traits to those of typical obscene and threatening telephone callers. Perhaps the Court does not better justify its stinginess because in reason it cannot.

### III.

I would reverse the judgment of the court of appeals in this cause and remand it to that court for further proceedings not inconsistent with this opinion. Because the Court does not, I respectfully dissent.

BAIRD and OVERSTREET, JJ., join this opinion.