Opinion issued January 26, 2006






     









In The
Court of Appeals
For The
First District of Texas




NOS. 01-04-01076-CR
          01-04-01077-CR




JASON LEE YARBOROUGH, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from 228th District Court
Harris County, Texas
Trial Court Cause Nos. 970801 and 1000890




MEMORANDUM OPINION

          A jury found appellant, Jason Lee Yarborough, guilty of aggravated assault



and capital murder.


 Appellant was sentenced to life in prison


 for the capital murder
offense and to 12 years in prison for the aggravated assault offense. In four issues,
appellant contends that (1) the evidence was legally and factually insufficient to
support his conviction for each offense; (2) the trial court’s exclusion of the defense’s
psychological expert was an abuse of discretion; and (3) the trial court’s denial of
appellant’s motion for new trial, without a hearing, was an abuse of discretion.
          We affirm. 
Background
          In the early morning hours of November 9, 2003, Stephen Davlin and Starlett
Amber McCoy were each shot in the head as the two sat in the front seat of a car
driven by Davlin. The shooting rendered Davlin blind and killed McCoy. The
following is Davlin’s account, taken from his trial testimony, of the events
surrounding the shooting.
 
          On November 8, 2002, Davlin and McCoy were at a bar together; the two had
been dating for approximately one month. Davlin, an admitted drug dealer, had
supplied appellant with cocaine in the past. Appellant knew that Davlin had received
nine ounces of cocaine worth $4,500 that day. Appellant telephoned Davlin at the bar
requesting cocaine. 
          Davlin and McCoy left the bar in a white Dodge Intrepid, owned by McCoy’s
grandmother, and went to appellant’s house. When the pair arrived, appellant told
them that he needed to go to a Mobil station to get some change. On the way to the
station, Davlin saw appellant put a gun in his pocket. Davlin did not say anything to
appellant because he knew that appellant owned a gun. 
          After stopping at the Mobil station, Davlin, McCoy, and appellant drove to the
home of Charles White, another of Davlin’s customers. White told Davlin that he
needed to get money from a teller machine. White followed Davlin in his own
vehicle to a Diamond Shamrock. Davlin parked the white Intrepid near the front door
of the store. While Davlin was conducting the drug transaction in the parking lot
with White, appellant sat in the backseat of the Intrepid. After providing White with
$150 worth of cocaine, Davlin left the Diamond Shamrock to take appellant home. 
Davlin was driving, McCoy was in the front passenger seat, and appellant was in the
back seat. 
          While on the way to appellant’s house, appellant told Davlin to stop the car. 
Davlin thought that appellant needed to urinate. Davlin stopped the car. Davlin then
saw a white “dually” truck pass. Davlin thought that the truck looked like the one
owned by “Big Dan,” a rival drug dealer.
          Davlin then saw the back passenger-side door open and heard appellant say,
“All right, now, give me your shit.” Davlin knew that appellant had a gun and
believed that appellant was “trying to rob me for the dope.” Davlin responded, “Ha,
ha, yeah, right.” The next thing that Davlin recalled was waking up in the hospital,
with gunshot wounds to his head. The shooting completely destroyed one of Davlin’s
eyes and damaged his optic nerve, leaving Davlin blind. Later, Davlin learned that
McCoy had also been shot and had died from her wounds. 
Legal and Factual Sufficiency 
          In his first two points of error, appellant challenges the legal and factual
sufficiency of the evidence as to each offense. Appellant contends that the evidence
is legally and factually insufficient to prove that he was the person who shot Davlin
and McCoy.
A.      Standards of Review
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Although our analysis considers
all of the evidence presented at trial, we may not re-weigh the evidence and substitute
our judgment for that of the fact-finder. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000).
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or if the contrary evidence is so strong that the
standard of proof of beyond a reasonable doubt could not have been met. Escamilla
v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 481 (Tex. Crim. App. 2004)). We must defer appropriately to the fact-finder to avoid substituting our judgment for its judgment. Zuniga, 144 S.W.3d at
481–82. Our evaluation may not intrude upon the fact-finder’s role as the sole judge
of the weight and credibility accorded any witness’s testimony. Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). As the evaluator of credibility and
demeanor, the fact-finder alone determines what weight to place on contradictory
testimonial evidence. Id. at 408–09. The fact-finder may choose to believe all, some,
or none of the testimony presented. See id. In conducting a factual-sufficiency
review, we must discuss the evidence that, according to the appellant, most
undermines the jury’s verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003).
          The standards of review for legal-sufficiency and factual-sufficiency challenges
are the same for direct-evidence and circumstantial-evidence cases. Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986). 
B.      Legal-Sufficiency Analysis
          In support of his legal-sufficiency challenge, appellant argues that evidence
was presented that cast doubt on Davlin’s credibility as a witness and that showed
that other persons had motive to kill Davlin and McCoy. Though such arguments
were appropriate in the context of appellant’s trial, such arguments do not conform
with the legal-sufficiency standard of review on appeal. Arguments casting doubt on
Davlin’s credibility and asserting that others may have wanted to kill Davlin and
McCoy may well have been important considerations in the jury’s deliberations, but
they do not view the evidence in the light most favorable to the verdict and are, thus,
not appropriate to support a legal-sufficiency challenge.
          Appellant also contends that “[n]ot a single shred of forensic evidence tied
[appellant] to this crime” and points out that Davlin “could not even state that
appellant actually shot him.” Texas case law holds that establishing a defendant as
the perpetrator of a crime can be proved by direct or circumstantial evidence. Earls
v. State, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); Greene v. State, 124 S.W.3d
789, 792 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d). When viewed in the light
most favorable to the verdict, Davlin’s testimony, as detailed above, is evidence from
which a reasonable jury could have found beyond a reasonable doubt that appellant
was the person who shot Davlin and McCoy.
          In addition, viewing the evidence in the light most favorable to the verdict
reveals other evidence that corroborates Davlin’s testimony and supports the jury’s
finding that appellant committed the charged offenses of aggravated assault and
capital murder.
          A tow truck driver, John Higginbotham, who had responded to the shooting
scene, testified that, after arriving at the scene, he realized that he had seen the
Intrepid earlier that night at the Diamond Shamrock station and had contacted the
police. Higginbotham recalled that he saw a man in the backseat with long (shoulder-length) dirty-blonde hair that was “kind of curly.” Other testimony confirmed that
this is what appellant’s hair looked like at the time of the shootings. 
          The primary investigating officer on the case testified that Higginbotham was
shown a photographic array, which included appellant’s picture. Higginbotham could
not positively identify appellant as the man whom he had seen in the backseat of the
Intrepid. However, based on appellant’s hair, Higginbotham identified appellant as
the one who “looked most like the person that he saw in the car.” 
          In addition, testimony was presented at trial that appellant’s girlfriend and the
mother of his child, Shawnace Montgomery, had engaged in sexual relations with
Davlin. Montgomery testified that appellant suspected that she had been unfaithful
with Davlin and that she and appellant had argued about it. 
          Greg Griffith testified that he went to appellant’s home to smoke marijuana and
that, when he arrived, appellant was “sort of angry.” Appellant told Griffith that he
thought Montgomery was sleeping with Davlin. Appellant asked Griffith where he
could “get a throw-away pistol.” Griffith told appellant to talk to Big Dan about
getting a gun. Several days later, Griffith heard that Davlin had been shot. 
          Four to six days after Davlin had been shot, Griffith saw appellant at Big Dan’s
house. Griffith observed appellant giving Big Dan a quantity of block cocaine. The
State presented law-enforcement testimony at trial that the nine ounces of cocaine that
Davlin testified to having under the driver’s seat of the Intrepid was not recovered
from the car. Also missing was $1,500 in cash that Davlin had on his person that
night.
          Montgomery testified that when she would mention the shooting, appellant
asked her why she was “so worried about it.” Other times, appellant became angry
or would walk away from Montgomery when she brought up the subject.
          Montgomery also testified that another acquaintance, Rick Dill, had shown her
a letter written by appellant after appellant’s arrest. In the letter, appellant asked Dill
to say that appellant was with Dill and Montgomery watching two certain movies on
the night of the shootings. Montgomery testified that she, Dill, and Montgomery had
not watched movies on the night of the shootings.
          The State presented evidence that spent shell casings from a nine-millimeter
Luger were recovered both inside and outside the Intrepid. Montgomery testified that
appellant at one time possessed a nine-millimeter handgun belonging to Charlie
White. The State also presented testimony from the crime scene investigator that one
of the shots was definitely fired from the backseat and that another was fired through
either an open back door or open back window.
          Viewing the evidence in the light most favorable to the verdict, we conclude
that the a reasonable jury could have inferred that appellant was the person who shot
Davlin and McCoy. Accordingly, we hold that the evidence was legally sufficient to
support appellant’s convictions for aggravated assault and capital murder.
          We overrule appellant’s first point of error.
B.      Factual-Sufficiency Analysis
          Appellant contends that Davlin’s testimony implicating him was not credible
because Davlin admitted to the following: (1) he was a drug dealer, who had $4,500
worth of cocaine with him the night that he was shot; (2) he had been smoking
marijuana earlier on the day that he was shot; and (3) he had lied to the police during
his initial interview with them. Appellant also contends that Davlin had a motive to
lie because he had an outstanding drug case pending against him and suggests that
Davlin’s memory was rendered defective from the shooting. Appellant also cites
evidence that others, including Big Dan and McCoy’s common law husband, had
motive to kill Davlin. Appellant points to Davlin’s testimony that he thought that he
saw Big Dan’s truck drive by immediately before the shooting. 
          A decision is not manifestly unjust merely because the jury resolved conflicting
views of the evidence in favor of the State. Cain, 958 S.W.2d at 407. Moreover, the
jury is the sole judge of the credibility of the witnesses and the weight to be given
their testimony, and the jury may believe or disbelieve all or any part of a witness’s
testimony. Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). We
conclude that the verdict is not clearly wrong and that the evidence, as detailed in
previous sections of this opinion, is not such that the standard of proof of beyond a
reasonable doubt could not have been met. Accordingly, we hold that the evidence
was factually sufficient to support appellant’s conviction.
          We overrule appellant’s second point of error.
                                        Exclusion of Expert Testimony
          In his third point of error, appellant contends that the trial court abused its
discretion in excluding the testimony of psychologist Dr. Karen Gollaher, the
defense’s “expert on memory after traumatic brain injury.” 
          The trial court conducted a hearing outside the presence of the jury to
determine the admissibility of Dr. Gollaher’s testimony. Dr. Gollaher testified that,
based on her review of Davlin’s medical records, his videotaped statement given to
police, and his trial testimony, she could offer an opinion whether Davlin’s memory
had been affected by the shooting. Dr. Gollaher primarily based her opinion on her
perceived inconsistencies between Davlin’s videotaped interview and his trial
testimony regarding what he could recall about the shooting. 
          The trial court ruled that Dr. Gollaher’s testimony was not admissible. In
conjunction with its ruling, the trial court stated, “My concern is not the science or
the theories, but the application in this specific case.” The trial court concluded that
Dr. Gollaher’s testimony was “too global and too speculative in this particular case.” 
The trial court continued, “Because I do not think that it meets the third prong of
Daubert Test. And that is that the technique must have been properly applied to the
instant case.” The trial court also noted that the “inconsistencies were things that
were generally brought out in cross-examination of [Davlin].” Further, the trial court
indicated that the defense had not established that Davlin had suffered a brain injury. 
          The defense then made a bill of exception consisting of Dr. Gollaher’s
testimony, Davlin’s medical records, the doctor’s curriculum vitae, and Davlin’s
videotaped interview. At the conclusion of the bill, defense counsel asked, if the trial
court would not allow Dr. Gollaher to testify specifically as to Davlin, whether the
court would “permit [Dr. Gollaher] to testify as an educational witness much like in
battered-wife syndrome and in other traumatic stress disorders where experts are
allowed . . . to testify as to matters that a jury may not be familiar with . . . .” The
defense stated that Dr. Gollaher’s testimony would concern “short-term memory loss
versus long-term memory loss caused by traumatic injury in general.” The defense
argued that there were “issues” whether “Mr. Davlin does remember as he said in
Court yesterday from the day he arrived in the hospital on November 9, 2002, which
is inconsistent with what he testified in the video of May of 2003 when he said that
it’s just coming back in pieces.” Defense counsel suggested that Dr. Gollaher could,
without referencing the specific facts of the case, “testify as to hypotheticals as well
as to educate the jury regarding the area of neuropsychology.” 
          The State responded that any assistance to the jury offered by Dr. Gollaher’s 
testimony on the issue of credibility would be outweighed by the confusion that the
testimony would create. The State also argued that, “even [with] battered-wife’s
syndrome . . . , usually there’s a nexus to the defendant . . . .” 
          The trial court denied the defense’s request to allow Dr. Gollaher to provide
general testimony about memory and traumatic brain injury. In conjunction with its
ruling, the trial court stated, “[T]he problem that I have is that if you just put in that
general information without being able to specifically state that the witness . . .
suffers from any of those, then you’re essentially asking the jury to speculate.” The
trial court also noted that “any inconsistencies that [Davlin] had in his testimony was
brought out in your cross-examination.” The trial court concluded that Dr. Gollaher’s
general testimony would not have “any probative value as it would be applied in this
case under these circumstances.”
          The threshold determination for admitting expert testimony is whether the
specialized knowledge will assist the trier of fact to understand the evidence or to
determine a fact in issue. Tex. R. Evid. 702; Rousseau v. State, 855 S.W.2d 666, 686
(Tex. Crim. App. 1993). We review the decision of the trial court to admit or to
exclude expert testimony for an abuse of discretion. Sexton v. State, 93 S.W.3d 96,
99 (Tex. Crim. App. 2002). 
          The State relies on the Court of Criminal Appeals holding in Williams v. State
that “generic testimony” is not sufficient unless it is connected to the facts at issue. 
See 895 S.W.2d 363, 366 (Tex. Crim. App. 1994) (concluding that testimony from
expert regarding defendant’s psychological profile was too generic to be helpful to
jury); see also Rousseau, 855 S.W.2d at 686 (noting expert only referred to “studies”
and did not discuss whether any factors to which he planned to testify would apply
to facts of case); Pierce v. State, 777 S.W.2d 399, 414–16 (Tex. Crim. App. 1989)
(concluding that expert’s testimony failed to apply general principles of unreliability
in eyewitness testimony to specific facts of case). The State asserts that Dr. Gollaher
did not connect her “generic” testimony regarding brain injury and memory loss to
the specific facts of this case. In particular, the State contends that the doctor did not
establish the threshold fact that Davlin had suffered a brain injury.
          Here, appellant contends that “[t]he jury was denied the opportunity to hear that
in most people who suffer such dramatic injury as Mr. Davlin there is great memory
loss, and often they are subject to being swayed that incidents occurred which did
not.” Such contention, however, presumes that Dr. Gollaher sufficiently connected
her generic testimony regarding brain injury and memory loss to the facts of this case.
It is elemental that the burden on appeal is on the appellant to show that the court
abused its discretion in excluding evidence. See Johnson v. State, 698 S.W.2d 154,
160 (Tex. Crim. App. 1985). In his brief, appellant characterizes Dr. Gollaher’s
testimony, which he contends was wrongfully excluded, as regarding “general
knowledge relating to the impact on memory of a severe injury to the brain.” 
(Emphasis added.) Appellant presents no appellate argument that the trial court
abused its discretion in excluding the general testimony of Dr. Gollaher because the
doctor had sufficiently tied her abstract testimony regarding brain injury and memory
loss to Davlin. See Williams, 895 S.W.2d at 366, Rousseau, 855 S.W.2d at 686,
Pierce, 777 S.W.2d at 414–16; see also Tex. R. App. P. 38.1(h). 
          We hold that appellant has not shown that the trial court abused its discretion
in excluding Dr. Gollaher’s testimony. 
          We overrule appellant’s third point of error.
Denial of Motions for New Trial
          In his fourth point of error, appellant contends that the trial court abused its
discretion when it denied appellant’s motions for new trial without a hearing.



          Appellant filed a motion for new trial on November 11, 2004, alleging jury
tampering and complaining of the trial court’s exclusion of Dr. Gollaher’s testimony.
The trial court did not hold a hearing, and the motions for new trial were overruled
by operation of law. See Tex. R. App. P. 21.8(c). 
 
          The rules of appellate procedure require that a party “present” his motion for
new trial to the trial court within specified time limits. Tex. R. App. P. 21.6
(providing generally that defendant must present motion for new trial to trial court
within ten days of its filing); Carranza v. State, 960 S.W.2d 76, 79 (Tex. Crim. App.
1998) (holding that appellant had burden not only to file motion for new trial, but also
to present it to trial court); see Reyes v. State, 849 S.W.2d 812, 815 (Tex. Crim. App.
1993). The term “‘present’ . . . means the record must show the movant for a new
trial sustained the burden of actually delivering the motion for new trial to the trial
court or otherwise bringing the motion to the attention or actual notice of the trial
court.” Carranza, 960 S.W.2d at 79.
          Here, the record shows that appellant attached to his motion for new trial an
“Order For a Setting,” indicating appellant’s desire that a hearing be set on the
motion. Lacking from the record, however, is any indication that appellant actually
delivered the motion for new trial (or the attached “Order For a Setting”) to the trial
court, otherwise brought the motion to the trial court’s attention, or gave the trial
court actual notice of the filing. In other words, the record does not show that
appellant presented the motion for new trial to the trial court. Accordingly, appellant
forfeited his complaint for review because he failed to preserve error. See Tex. R.
App. P. 33.1(a); Mendez v. State, 138 S.W.3d 334, 339 (Tex. Crim. App. 2004). 
          We overrule his fourth point of error.
Conclusion
          We affirm the judgments of the trial court. 




                                         Laura Carter Higley
                                         Justice 

Panel consists of Justices Taft, Higley, and Bland.

Do not publish. Tex. R. App. P. 47.2(b).