

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,019

## BILLIE WAYNE COBLE, Appellant

### v.

## THE STATE OF TEXAS

## ON DIRECT APPEAL FROM THE 54TH JUDICIAL DISTRICT COURT
## McLENNAN COUNTY

KELLER, P.J., filed a concurring opinion in which MEYERS, and KEASLER, JJ., joined.

Rule 702 is not just about scientific evidence:

If scientific, technical, or *other specialized knowledge* will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, *experience*, training, or education may testify thereto in the form of an opinion or otherwise.[1]

We recognized in *Nenno* that expert testimony can be of the "nonscientific" variety, but that, in any

event, it might not be fruitful to draw "a rigid distinction between 'hard' science, 'soft' sciences, or

---

[1] TEX. R. EVID. 702 (emphasis added).

nonscientifc testimony" because the "distinction between various types of testimony may often be blurred."[2] In *Griffith*, we explained that future dangerousness testimony can be provided by a mental health expert based upon the expert's "specialized education and experience."[3]

Rule 702 was meant to "relax the traditional barriers to opinion testimony."[4] The rule steered courts away from *Frye*'s[5] "general acceptance" standard[6] toward determining whether the expert's testimony would be helpful to the trier of fact.[7] For evidence to be helpful to the trier of fact, it must be reliable, but reliability need not always be measured with the rigor that is applied to the hard sciences.[8] The reliability inquiry is "a flexible one."[9] And even if "the subject matter is within the comprehension of the average jury," "[i]f the witness has some special knowledge or additional insight into the field that would be helpful, then the expert can assist the trier of fact to understand the evidence or to determine a fact in issue."[10] Expert testimony that encompasses a field outside of the hard sciences is admissible if: (1) the field of expertise is a legitimate one, (2) the subject matter of the expert's testimony is within the scope of the field, and (3) the expert's testimony

---

[2] *Nenno v. State*, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998).

[3] *Griffith v. State*, 983 S.W.2d 282, 288 (Tex. Crim. App. 1998).

[4] *Nenno*, 970 S.W.2d at 560 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993)).

[5] *See Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923).

[6] *Daubert*, 509 U.S. at 589.

[7] *Id.* at 591; *Williams v. State*, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994).

[8] *Nenno*, 970 S.W.2d at 561.

[9] *Id.*

[10] *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006).

properly relies upon and/or utilizes the principles involved in the field.[11]

As the Court has observed, Dr. Coons is a psychiatrist who has been practicing forensic psychiatry for thirty-one years. He has evaluated the competency or sanity of between 8,000 and 10,000 people, he has performed approximately 150 evaluations of future dangerousness, and he has testified in approximately fifty cases. As the Court acknowledges, the record further shows that psychiatric principles are commonly used in the civil commitment context to determine whether a person poses a danger to himself or others. I would add that the record also shows the following: First, while clinical practice is a relatively small part of Dr. Coons's work, he has treated over 3,000 patients. Second, Dr. Coons subscribes to two journals in forensic psychiatry, goes to annual meetings, and has lectured on forensic psychiatry at the University of Texas Law School, at various attorney associations, and at continuing legal education seminars.

With respect to assessing future dangerousness, Dr. Coons's educational background and his prior experience place him in a better position than the average juror. As Dr. Coons explained at trial:

> I don't know that there's any specific rule or external measure, um, other than to say that, you know experience is – is important in these matters. It's just like you go to the jail and you talk to a corrections officer and they say, So and so is dangerous. Why? I just know they are, or some things that they've said, or whatever. Uh, and they've had experience with that. Forensic psychiatrists have had experience with however many people they've seen or cases they've dealt with. And they develop an experiential body of knowledge and information and approach that helps them make their decisions.

In making his assessment, Dr. Coons relied upon information from a variety of sources: an interview with Lorna Sue Sawyer; a vital statistics death certificate regarding Arthur Coble; a note

---

[11] *Nenno*, 970 S.W.2d at 561.

from a senior criminal investigator with the prosecutor's office; a narrative summary from the Naval Hospital at San Diego regarding appellant; a report from Clay Griffith, M.D.; a timeline prepared by the prosecutor's office; appellant's military personnel records; testimony from appellant's prior trial from Dr. Grigson, Mary Ivey, and Dr. Mark; appellant's writings from the Polunsky Unit; the grand jury testimony of appellant's mother and sister; incoming and outgoing mail from the county jail; and a report from Dr. Ralph Hodges.[12] Dr. Coons explained that he always uses the same factors in evaluating dangerousness and has done so for at least twenty years.

The evidence at trial—Dr. Coons testimony—shows that forensic psychiatry is a legitimate field, that predicting future dangerousness is within the scope of that field, and that using education and experience to assess future dangerousness is a proper application of the principles involved in the field. Notably, appellant has presented no evidence to the contrary. The Court faults Dr. Coons for failing to cite "books, articles, journals, or even other forensic psychiatrists who practice in this area" to substantiate his methodology, while acknowledging that Dr. Coons is "a genuine forensic psychiatrist with a lengthy medical career."[13] But appellant did not introduce any "books, articles, journals, or even other forensic psychiatrists" to testify that, contrary to Dr. Coons's testimony, Dr.

---

[12] Dr. Hodges diagnosed appellant at age fifteen as having "a sociopathic personality disturbance of the dissocial order." According to Dr. Hodges, such a diagnosis is for an individual who has "little concern about others" and "who are concerned about . . . gratifying their own wishes with little regard of the cost in terms of money or pain that they inflict on others." Dr. Hodges testified further that this diagnosis involves "extreme self-centeredness," someone who is "basically uncaring about the welfare or well-being of others." Dr. Hodges testified that a later revision of the DSM manual changed the name of the disorder to "conduct disorder" and prohibited the diagnosis for anyone under age eighteen.

[13] Court's op. at 30.

Coons's experience-based method of evaluating future dangerousness is inappropriate.[14]

I would hold that the trial court did not err in admitting Dr. Coons's testimony. I therefore concur in the Court's judgment.

Filed: October 13, 2010
Publish

---

[14] Of course, the fact that neither party presented any "books, articles, or journals" at trial has not prevented the Court from citing those types of sources. Even though the Court does not expressly rely upon those sources for the proposition that Dr. Coons's methodology is inappropriate, the court implicitly relies upon them to suggest that there is a substantial body of literature that Dr. Coons should have relied upon in his testimony. I find such reliance by the Court to be inappropriate, absent some indication in appellate opinions that these sources have been considered in an adversarial hearing, for the reasons expressed in my concurring opinion in *Hernandez v. State*, 116 S.W.3d 26, 32-37 (Tex. Crim. App. 2003) (Keller, P.J., concurring). But even if one adhered to Judge Keasler's view that an appellate court is free to consider such materials, *see id.* at 43-52 (Keasler, J., dissenting), the Court fails to comprehensively consider the issue in light of the materials it cites. So the Court has its cake and eats it too: considering the existence of this off-the-record literature to find that Dr. Coons has failed to offer sufficient proof that his methodology is legitimate, but not considering the contents of these materials to determine whether they approve of his methodology.