IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NO. AP-76,019






BILLIE WAYNE COBLE, Appellant


v.


THE STATE OF TEXAS





ON DIRECT APPEAL FROM THE 54TH JUDICIAL DISTRICT COURT

McLENNAN COUNTY





 Keller, P.J., filed a concurring opinion in which Meyers, and Keasler, JJ.,
joined.





 Rule 702 is not just about scientific evidence:

If scientific, technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as an
expert by knowledge, skill, experience, training, or education may testify thereto in
the form of an opinion or otherwise. (1)


We recognized in Nenno that expert testimony can be of the "nonscientific" variety, but that, in any
event, it might not be fruitful to draw "a rigid distinction between 'hard' science, 'soft' sciences, or
nonscientifc testimony" because the "distinction between various types of testimony may often be
blurred." (2) In Griffith, we explained that future dangerousness testimony can be provided by a mental
health expert based upon the expert's "specialized education and experience." (3)

 Rule 702 was meant to "relax the traditional barriers to opinion testimony." (4) The rule steered
courts away from Frye's (5) "general acceptance" standard (6) toward determining whether the expert's
testimony would be helpful to the trier of fact. (7) For evidence to be helpful to the trier of fact, it must
be reliable, but reliability need not always be measured with the rigor that is applied to the hard
sciences. (8) The reliability inquiry is "a flexible one." (9) And even if "the subject matter is within the
comprehension of the average jury," "[i]f the witness has some special knowledge or additional
insight into the field that would be helpful, then the expert can assist the trier of fact to understand
the evidence or to determine a fact in issue." (10) Expert testimony that encompasses a field outside
of the hard sciences is admissible if: (1) the field of expertise is a legitimate one, (2) the subject
matter of the expert's testimony is within the scope of the field, and (3) the expert's testimony
properly relies upon and/or utilizes the principles involved in the field. (11)

 As the Court has observed, Dr. Coons is a psychiatrist who has been practicing forensic
psychiatry for thirty-one years. He has evaluated the competency or sanity of between 8,000 and
10,000 people, he has performed approximately 150 evaluations of future dangerousness, and he has
testified in approximately fifty cases. As the Court acknowledges, the record further shows that
psychiatric principles are commonly used in the civil commitment context to determine whether a
person poses a danger to himself or others. I would add that the record also shows the following:
First, while clinical practice is a relatively small part of Dr. Coons's work, he has treated over 3,000
patients. Second, Dr. Coons subscribes to two journals in forensic psychiatry, goes to annual
meetings, and has lectured on forensic psychiatry at the University of Texas Law School, at various
attorney associations, and at continuing legal education seminars. 

 With respect to assessing future dangerousness, Dr. Coons's educational background and his
prior experience place him in a better position than the average juror. As Dr. Coons explained at
trial:

I don't know that there's any specific rule or external measure, um, other than to say
that, you know experience is - is important in these matters. It's just like you go to
the jail and you talk to a corrections officer and they say, So and so is dangerous. 
Why? I just know they are, or some things that they've said, or whatever. Uh, and
they've had experience with that. Forensic psychiatrists have had experience with
however many people they've seen or cases they've dealt with. And they develop an
experiential body of knowledge and information and approach that helps them make
their decisions.


 In making his assessment, Dr. Coons relied upon information from a variety of sources: an
interview with Lorna Sue Sawyer; a vital statistics death certificate regarding Arthur Coble; a note
from a senior criminal investigator with the prosecutor's office; a narrative summary from the Naval
Hospital at San Diego regarding appellant; a report from Clay Griffith, M.D.; a timeline prepared
by the prosecutor's office; appellant's military personnel records; testimony from appellant's prior
trial from Dr. Grigson, Mary Ivey, and Dr. Mark; appellant's writings from the Polunsky Unit; the
grand jury testimony of appellant's mother and sister; incoming and outgoing mail from the county
jail; and a report from Dr. Ralph Hodges. (12) Dr. Coons explained that he always uses the same factors
in evaluating dangerousness and has done so for at least twenty years.

 The evidence at trial--Dr. Coons testimony--shows that forensic psychiatry is a legitimate
field, that predicting future dangerousness is within the scope of that field, and that using education
and experience to assess future dangerousness is a proper application of the principles involved in
the field. Notably, appellant has presented no evidence to the contrary. The Court faults Dr. Coons
for failing to cite "books, articles, journals, or even other forensic psychiatrists who practice in this
area" to substantiate his methodology, while acknowledging that Dr. Coons is "a genuine forensic
psychiatrist with a lengthy medical career." (13) But appellant did not introduce any "books, articles,
journals, or even other forensic psychiatrists" to testify that, contrary to Dr. Coons's testimony, Dr.
Coons's experience-based method of evaluating future dangerousness is inappropriate. (14)

 I would hold that the trial court did not err in admitting Dr. Coons's testimony. I therefore
concur in the Court's judgment. 

Filed: October 13, 2010

Publish
1. Tex. R. Evid. 702 (emphasis added).
2. Nenno v. State, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998).
3. Griffith v. State, 983 S.W.2d 282, 288 (Tex. Crim. App. 1998).
4. Nenno, 970 S.W.2d at 560 (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509
U.S. 579, 588 (1993)). 
5. See Frye v. United States, 54 App. D.C. 46, 293 F. 1013 (1923).
6. Daubert, 509 U.S. at 589.
7. Id. at 591; Williams v. State, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994). 
8. Nenno, 970 S.W.2d at 561.
9. Id.
10. Rodgers v. State, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006).
11. Nenno, 970 S.W.2d at 561.
12. Dr. Hodges diagnosed appellant at age fifteen as having "a sociopathic personality
disturbance of the dissocial order." According to Dr. Hodges, such a diagnosis is for an individual
who has "little concern about others" and "who are concerned about . . . gratifying their own wishes
with little regard of the cost in terms of money or pain that they inflict on others." Dr. Hodges
testified further that this diagnosis involves "extreme self-centeredness," someone who is "basically
uncaring about the welfare or well-being of others." Dr. Hodges testified that a later revision of the
DSM manual changed the name of the disorder to "conduct disorder" and prohibited the diagnosis
for anyone under age eighteen. 
13. Court's op. at 30.
14. Of course, the fact that neither party presented any "books, articles, or journals" at trial
has not prevented the Court from citing those types of sources. Even though the Court does not
expressly rely upon those sources for the proposition that Dr. Coons's methodology is inappropriate,
the court implicitly relies upon them to suggest that there is a substantial body of literature that Dr.
Coons should have relied upon in his testimony. I find such reliance by the Court to be
inappropriate, absent some indication in appellate opinions that these sources have been considered
in an adversarial hearing, for the reasons expressed in my concurring opinion in Hernandez v. State,
116 S.W.3d 26, 32-37 (Tex. Crim. App. 2003) (Keller, P.J., concurring). But even if one adhered
to Judge Keasler's view that an appellate court is free to consider such materials, see id. at 43-52
(Keasler, J., dissenting), the Court fails to comprehensively consider the issue in light of the
materials it cites. So the Court has its cake and eats it too: considering the existence of this off-the-record literature to find that Dr. Coons has failed to offer sufficient proof that his methodology is
legitimate, but not considering the contents of these materials to determine whether they approve of
his methodology.