**Affirmed as Modified and Majority and Concurring Opinions filed August 27, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00142-CR

---

### ROGELIO AVILES-BARROSO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1364839**

---

## C O N C U R R I N G   O P I N I O N

In determining whether a voice identification is reliable, binding precedent requires this court to consider the factors articulated in *Neil v. Biggers*.[1] These

---

[1] *See* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Williams v. State*, 850 S.W.2d 784, 786–87 (Tex. App.—Houston [14th Dist.] 1993) (holding that indicia of reliability in a voice identification include the witness's opportunity to hear, the degree of attention, the accuracy of the description, the level of certainty, and the time between the event and the confrontation), *aff'd on other grounds by*, 895 S.W.2d 363 (Tex. Crim. App. 1994).

factors are: (1) the witness's opportunity to hear the speaker at the time of the event, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the speaker's voice, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the event and the confrontation.[2]  Applying these factors in a *Biggers* analysis, the majority concludes that Diana's voice identification is reliable.  The precedent applying the *Biggers* test supports that result.  Because we are bound to apply the *Biggers* test, I concur in the court's judgment, but I write separately to suggest that it is time for courts to reconsider the *Biggers* factors as applied to voice identification.

In the forty-three years since the Supreme Court of the United States articulated the *Biggers* factors, scientists have been studying whether these factors accurately predict the reliability of a witness's identification.  The findings raise concerns.  Studies are ongoing, but the research results in hand tend to undercut confidence that the *Biggers* factors are truly indicia of reliability.  The scientific literature suggests that though some of the *Biggers* factors relate to the reliability of a witness's identification, others do not.  Empirical research seems to be revealing that some of the factors may not be good indicators of reliability.

Not surprisingly, scientists have confirmed that the opportunity to view or hear a suspect and the length of time between the event and the confrontation affect the reliability of a witness's identification.[3]  But, unexpectedly, some research has shown that a witness's confidence in the identification does not impact reliability.[4]  Likewise, some research seems to show that the relationship

---

[2] *See Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382.

[3] *See* Cindy E. Laub et al., *Can the Courts Tell an Ear from an Eye?  Legal Approaches to Voice Identification Evidence*, 37 LAW & PSYCHOL. REV. 119, 123 (2013).

[4] Laub, *supra* note 3, at 124 & 142; Jason A. Cantone, *Do you Hear What I Hear?*, 17

between the characteristics of the witness's verbal description of an individual and the characteristics of the person identified does not affect reliability.[5] If the research results are valid, the lack of correlation undermines the validity of these *Biggers* factors.

Questions about the efficacy of the *Biggers* test are more pronounced in the context of a voice identification like the identification Diana made in today's case.[6] Research indicates that vocal identifications are less accurate than eyewitness identifications, potentially because the human brain processes faces for later recognition and speech for meaning.[7] The fundamental differences between the way the human brain processes faces and the way the human brain processes speech may mean there are differences between the factors that indicate a reliable visual identification and those that indicate a reliable vocal identification.[8]

Researchers have suggested, for example, that while a witness's opportunity to hear the speaker at the time of the event is important to the reliability of a voice identification just as the opportunity to view the actor's face is important to a visual identification, the accuracy of a voice identification also depends on similarities between the voice at the time of the event and the voice at the time of identification.[9] Research shows that an earwitness's accuracy in identifying a voice increases when the tone and emotion in the identified voice sample match the tone and emotion of the voice during the event.[10] Similarly, while research

---

TEX. WESLEYAN L. REV. 123, 130–31 (2011).

[5] *See* Laub, *supra* note 4, at 124.

[6] *See id.* at 120.

[7] *Id.* at 124–25.

[8] *See id.* at 123.

[9] *See id.*

[10] *See* Cantone, *supra* note 3, at 128.

suggests the length of time between hearing the voice and identifying it affects a witness's accuracy just as the length of time between the event and a witness's visual identification affects accuracy, the effect of the length of the retention interval is different in vocal identifications.[11] Researchers have suggested that with unfamiliar voices, vocal identifications can deteriorate significantly within weeks of the event.[12] In one study, subjects asked to recall a voice had only a nine percent accuracy rate after three weeks.[13] It seems that the "reliability" window with respect to the interval between the event and the confrontation may be much narrower for voice identification.

Cross-lingual voice identification triggers additional concerns because this species of voice identification implicates additional considerations. Although existing studies appear to be somewhat in conflict, some research suggests that people are more likely to hear the voices of speakers in a foreign or accented language as homogeneous or similar, but are able to perceive diversity or distinctive forms of speech among speakers of their own regional area.[14] Anecdotally speaking, native Texans might easily distinguish among the voices of other native Texans but might have difficulty distinguishing among speakers with a Boston accent based on voice alone. Researchers and academicians alike warn of the dangers inherent in cross-lingual voice identification.[15]

Though appellant's expert witnesses discussed some of these considerations

---

[11] Laub, *supra* note 3, at 124.

[12] *See* Cantone, *supra* note 3, at 130; A. Daniel Yarmey, *Earwitness Speaker Identification*, 1 PSYCHOL. PUB. POL'Y & L. 792, 805 (1995).

[13] Cantone, *supra* note 3, at 130; Yarmey, *supra* note 11, at 805.

[14] *See* Yarmey, *supra* note 11, at 798.

[15] *See* Gary Edmond et al., *'Mere Guesswork': Cross-Lingual Voice Comparisons and the Jury*, 33 SYDNEY L. REV. 395, 405–08 (2011).

during the motion-to-suppress hearing, appellant did not fully develop the potential problems in Diana's voice identification. Appellant cross-examined investigator Kerry Gillie about the twenty-year gap between the event and the confrontation, and Dr. Philip Lyons noted that there are difficulties identifying a speaker who spoke Spanish with a different dialect. Dr. Lyons testified, however, that he was unaware of any studies that looked at dialects rather than identifying speakers of foreign languages. In fairness, these are emerging issues in science as well as law. The empirical research and scholarship are still developing, and the law may not be keeping pace with the science.

Given the changing landscape, we must continue to ask whether the *Biggers* factors are the best measure of reliability for voice identification. What is clear from both scientific research and human experience is that familiarity plays a big role in reliable voice identification. So, when the voice being identified is an unfamiliar one, greater scrutiny is required for reliable voice identification, and greater scrutiny still when an earwitness is not familiar with either the speaker's voice or the speaker's dialect. Given the unfolding research in cross-lingual voice identification, we should question whether these elements should be given greater weight in a *Biggers* analysis and whether additional enumerated factors should be added to the *Biggers* test when it is applied to voice identification.

To ensure fair proceedings, courts should take these considerations into account in making reliability determinations, especially when the identification is based on voice alone, unaccompanied by visual or other forms of identification. Though the witness in today's case did not get a look at the speaker's entire face during the criminal episode, the witness was able to recall and identify facial features. Diana's recognition of appellant's facial features, though not powerful visual-identification evidence, strengthens, to some degree, the identification.

5

The gaps in science and law, known and unknown, tell us that the *Biggers* test may be falling short as a measure of reliability for voice identification. Now is the time to consider what steps can be taken to improve reliability testing in voice-identification cases.

Even though the scientific literature calls into question the validity of the *Biggers* factors, this court is bound to consider them.[16] Appellant did present limited testimony about a witness's inability to remember a voice over time. But, the record also reveals the witness had an opportunity to hear the speaker's voice during the criminal episode and was keenly focused on his voice; the witness provided a description of the Spanish dialect she detected in the speaker's voice; and she displayed unshakeable confidence in her identification. Under the precedent applying the *Biggers* test, these four factors support the trial court's admission of the identification evidence.[17] So, the result the majority reaches applying the *Biggers* test is sustainable under current law as is the majority's conclusion that the trial court did not err in admitting the witness's voice identification into evidence, based on the evidence presented to the trial court. For this reason, I respectfully concur in the judgment.

/s/    Kem Thompson Frost
       Chief Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally. (Boyce, J., Majority).
Publish — TEX. R. APP. P. 47.2(b).

---

[16] *See Williams*, 850 S.W.2d at 786–87.

[17] *See Davis v. State*, 180 S.W.3d 277, 283–85 (Tex. App.—Texarkana 2005, no pet.).

6