COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JOSE MARTINEZ, | § | No. 08-17-00165-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 1 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20160C07540) |
| | § | |

# **O P I N I O N**

Appealing his conviction for assault causing bodily injury to a family member, Appellant Jose Martinez asserts insufficient evidence for conviction, error in allowing admission of the victim's video statement to police, wrongful denial of new trial, error in allowing the testimony of an expert witness, and egregious error with a jury charge of self-defense. Finding no error, we affirm.

## BACKGROUND[1]

On August 1, 2016, Officers Guzman and Santiago of the El Paso Police Department, while working an overnight shift, responded to a 911 call of domestic disturbance made by Martinez.

---

[1] We present the background of the case from the record and evidence admitted at trial.

Arriving on scene, Crystal Garcia answered the door where she was soon joined by Martinez. Separating the residents, Officer Guzman met with Garcia while Officer Santiago met with Martinez. Guzman described Garcia as being "slightly distraught," "upset with the situation," "sad," and "[s]he had a little bit of teary eyes." After he asked about what had occurred and whether she had injuries, Guzman noticed that she had a redness on her skin underneath her neck that appeared to be fresh.

While Officer Guzman spoke with Garcia, Officer Santiago had been meeting with Martinez. Santiago noted that Martinez's breath smelled of alcohol and he was slightly intoxicated. When asked what had happened, Martinez reported that he had been arguing with Garcia about engagement rings[2] that he wanted back from her. Martinez reported that nothing had happened, and no assault occurred. Santiago had also observed redness in an area below Garcia's neck. Santiago asked Martinez about this redness. Martinez repeated that no assault had occurred, and nothing had happened.

While on scene, Santiago took photographs of Garcia's neck area and conducted a video recorded interview of just over five minutes in length. Santiago asked Garcia questions about what had happened. Garcia described Martinez as being "now my ex," but she also clarified that they had a seven-year old child together. She said that Martinez had lived with her for months, and then he would leave. She said he moved out of their home in February when he learned that he had had a child with another woman. Garcia described that Martinez had returned home drunk after he had left their home at 1:30 p.m., and he failed to pick up their son from her workplace at 5 o'clock. Although he sent her messages, he did not return home for hours. Once he returned, she and Martinez talked about their relationship. She described that she had gone through

---

[2] Both Martinez and Garcia use the term "rings," and we follow suit.

2

Martinez's phone and discovered messages from another woman and from his mother in which he mentioned that he was planning to leave with a truck they owned together.

Garcia described that an argument broke out when she confronted Martinez. She claimed they argued in front of their son and it became heated to the point that Martinez started pushing her and throwing her on the couch. She tried to get her son to leave the room, but Martinez would not let him go, and instead, he pushed their son onto their couch. As their argument continued, she slapped Martinez and tried to leave with her son. Martinez then grabbed her by her neck and threw her at a door, where she hit the back of her head. Garcia tried to leave again, but Martinez blocked her and their son. After a struggle, Garcia was able to get to the bedroom, but Martinez pursued her there and he threw her onto the bed. As their argument continued, Martinez threw her against a wall. She claimed that Martinez then decided to call 911 because he wanted her to return rings that he had given her.

When asked whether she had felt pain, Garcia responded that she felt pain when he bashed her head into a window, when Martinez grabbed her by the neck, and when he threw her against a wall in the bedroom. On the recording, she mentioned she currently had a headache. She admitted to slapping Martinez when he confronted her during their altercation. Completing her statement, she denied threatening Martinez in any way adding that he weighed over 230 to 250 pounds while she weighed 115 pounds.

*Trial Proceedings*

The State presented an information charging Martinez with family violence assault causing bodily injury. In two paragraphs, the information charged that Martinez intentionally, knowingly, or recklessly caused bodily injury to Garcia (1) by grabbing her neck with his hand; and (2) by pushing Garcia's body with his hand causing her head to strike a window. Prior to trial, the State

3

filed a pleading titled, "Notice of Potential Brady Material," providing notice to defense counsel about contact with Garcia[3] on September 21, 2016. The notice stated that Garcia had admitted that Martinez placed his hands on her, but she refused to comment about whether she had felt pain. Additionally, the State notified Martinez that Garcia claimed that "the police and District Attorney's office [were] blowing the entire incident out of proportion." Lastly, the notice stated that Garcia told the State that she had told Martinez's attorney that she did not want to prosecute the case and she was "extremely upset that the District Attorney's office ha[d] not dropped the case."

On April 25, 2017, the trial court called the case for a jury trial. After presenting Officers Guzman and Santiago, and admitting photographs of Garcia taken at the scene, the State next called Garcia to the stand to testify in its case-in-chief. Garcia identified Martinez as her spouse and testified that they had a seven-year-old son together. She was then asked whether she had provided a witness statement to officers on the night of August 1, 2016. After she responded with "I believe so, yes," the prosecutor stated he had no further questions. On cross-examination, defense counsel only asked a few short questions about her employment. On redirect, the State eventually asked Garcia to explain what happened between herself and Martinez on the date in question. Garcia claimed she went through Martinez's cell phone after he had returned home and had fallen asleep on their couch. When she found calls from another woman, she woke him up. She described that she threw the phone at him and slapped him to wake him up. Although Martinez was startled, she said he merely looked at her as he awoke from his sleep. Garcia claimed that Martinez never touched her.

At that point, the State offered Garcia's video statement (State's Exhibit 8), as a prior

---

[3] We note that the State refers to the complaining witness of the case as Crystal Martinez in the Notice of Potential Brady Material.

4

inconsistent statement but the trial court sustained Martinez's objection. Interrupting questioning of Garcia, the State recalled Officer Santiago to authenticate the recording. When the State offered the recording a second time, Martinez objected on several grounds including hearsay, Rule 403, and lack of foundation pursuant to Rule 613. Following a discussion outside the jury, the trial court allowed the State to recall Garcia. Garcia answered a series of questions about whether she made certain statements to police officers who had questioned her on August 1, 2016. Garcia primarily responded by stating that she was not sure of her prior statements or that she did not recall her earlier responses. She admitted, however, that she told the officers that Martinez had pushed her onto the bed and up against the wall, but she added that her statement was not true. The State then re-offered Garcia's recorded statement as an inconsistent statement. The court permitted its admission over Martinez's hearsay objection but only after the State produced a redacted copy.[4]

When cross-examined, Garcia further admitted that she had been angry with Martinez, she had thrown her phone at him while he slept, and she had slapped him. She also claimed that Martinez pushed her as a reaction and to get away from her, and when he did, she then fell back and tripped. Garcia testified that she had been exaggerating when she told the police officer that Martinez had grabbed her by the throat and had thrown her into a wall. She further added that her statement to the officer was not truthful. When asked at the end of her testimony whether she loved Martinez, Garcia answered "[y]es."

Following Garcia's testimony, the State called Stephanie Karr, executive director of the Center Against Sexual and Family Violence. Karr briefly described her educational background, her training pertaining to her position as executive director, and further mentioned she had been

---

[4] Outside the presence of the jury, the State informed the trial court that the recording had been redacted to eliminate a question in which Garcia was asked: "Has the defendant ever done this to you?"

employed with the center for 18 years. When the State asked that Karr be certified as an expert witness, Martinez objected on lack of foundation. The trial court permitted her to answer further questions subject to changing its ruling.

As an expert in the field of family violence, the State asked her to describe how victims of assault family violence commonly react when asked to testify. Karr testified that the reaction of survivors can range from denial that the event ever took place, protection of the aggressor, or an unwillingness to proceed with the prosecution. But Karr added that each individual is unique. Karr admitted that she never met with Garcia, nor did she listen to her trial testimony. She further explained that survivors can be intimidated by their aggressor, and in order to protect themselves and other family members, they may choose to restate certain facts. When asked further questions, Martinez again objected to lack of foundation and the trial court sustained his objection. The State asked no further questions. After the State rested its case, Martinez moved for a directed verdict, which the court denied.

Martinez testified in his own defense. He described that he had been drinking on the day of the incident, but he claimed he did not smell of alcohol. He claimed he had arrived home around 10 p.m. and fell asleep on the couch. He was awakened, but he did not know how. His eyes were closed, he did not know what hit him and he was "a little startled." Garcia asked him questions about his whereabouts and about people he had been with during the day. He backed away from her, but she continually closed in on him, getting in his face. Finally, she swung at him and hit him "pretty good across the temple." He then grabbed her hands, pushing her away, because retreating was not working. She tripped over the recliner, then fell back to the point that he knew she hit the back door. At that point Martinez called 911 to request a police escort to assist while he removed his belongings from the house. Martinez denied ever striking Garcia. Martinez also

claimed that he told the police that Garcia had struck him.

After Martinez rested his case, the jury received a jury charge which included a self-defense instruction. After deliberating, the jury returned a verdict of guilty. Pursuant to an agreement by the parties, the trial court later assessed punishment at one year's confinement, which was suspended in lieu of a 16-month probation term, a fine of $4,000 that was probated to $3,500, and court costs of $367. Thereafter, Martinez timely filed a motion for new trial alleging *inter alia* that he should be granted a new trial in the interest of justice. Martinez alleged that numerous errors affecting his rights occurred at trial which all resulted in a verdict contrary to law and facts. *See* TEX. R. APP. P. 21.3(a) and (h). In support of his motion, Martinez attached an affidavit from Garcia and a copy of a non-prosecution statement she had signed on September 14, 2016. Garcia's affidavit averred that she had informed the District Attorney's office in September 2016 that she did not consider herself to be a "complaining witness." Garcia further asserted that "if Mr. Martinez ever hurt me I would know how to complain, and that I never asked authorities to get involved or come to my house in the first place." After an evidentiary hearing that included further testimony from Garcia, the trial court took the motion under advisement; later, it was overruled by operation of law. This appeal followed.

## I.

## DISCUSSION

On appeal, Martinez advances six issues. Issue One challenges the sufficiency of the evidence to prove that he committed an assault. Issues Two, Three, and Four, respectively, challenge the admission of Garcia's video recorded statement. Issue Five contends the trial court erred in allowing a witness to testify to irrelevant matters under the guise of providing expert testimony. Issue Six contends the trial court committed egregious error by failing to properly

7

instruct the jury regarding his claim of self-defense. We consider each issue in turn, but issues that share a common factual or procedural background are partly combined for brevity.

## A. Sufficiency of the Evidence

In Issue One, we address Martinez's challenge to the sufficiency of the evidence to support his conviction. Martinez argues that the evidence was insufficient to prove that he had physical contact with Garcia for the purpose of causing bodily injury or that she suffered bodily injury. We disagree.

*Standard of Review*

Martinez's challenge to the sufficiency of the evidence requires the reviewing court to determine whether any rational trier-of-fact could have found the essential elements of the criminal offense beyond a reasonable doubt after having considered the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (establishing legal insufficiency under *Jackson v. Virginia* as the only standard for review of the evidence); *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018). In conducting our review, all evidence is considered irrespective of its admissibility. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).

We must give full weight to the trier-of-fact to resolve conflicts in testimony, to consider the evidence, and to draw reasonable inferences from all facts. *Arroyo*, 559 S.W.3d at 487 (quoting *Jackson*, 443 U.S. at 319). A reviewing court may not act as a thirteenth juror and make its own *de novo* assessment of the evidence. *Arroyo*, 559 S.W.3d at 487 (quoting *Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016)). The facts need not point directly to the defendant's guilt, but circumstantial evidence may be the basis for the trier-of-fact's determination. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (citing *Guevara v. State,* 152 S.W.3d 45, 49

8

(Tex. Crim. App. 2004)). We measure the evidence against the elements of the offense as defined by a hypothetically correct jury charge, which is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).

*Family Violence Assault Causing Bodily Injury*

A person commits a family-violence assault if he or she intentionally, knowingly, or recklessly causes bodily injury to another who is a family member, including an individual with whom the actor resides in the same dwelling, or with whom the actor (without regard to marriage) has a child or a dating relationship. *See* TEX. PENAL CODE ANN. § 22.01(a)(1); TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, 71.005. "Family" includes individuals who are former spouses of each other, individuals who are the parents of the same child, without regard to marriage, and without regard to whether those individuals reside together. TEX. FAM. CODE ANN. § 71.003. "Household" means "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other."[5] *See* TEX. FAM. CODE ANN. § 71.005. "Bodily injury," is defined as "physical pain, illness, or any impairment of physical condition." *See* TEX. PENAL CODE ANN. § 1.07(a)(8); *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (the element of bodily injury was satisfied when a complainant testified that she suffered physical pain when the defendant twisted her arm causing her to sustain a small bruise during the struggle). The

---

[5] Garcia gave a variety of responses about her marital status. At trial, she testified that Martinez was her spouse. On the night of the incident, however, she told police that she and Martinez were not married and had no common-law marriage. She described that she and Martinez had been co-habitating off and on for several years. Although the couple's marital status remained unclear, what is clear is that they had a son together, who was seven years of age at the time of the incident, and they had been periodically co-habitating for a number of years.

State has the burden to prove each element beyond a reasonable doubt. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013).

Martinez contends it was impossible for the jury to find that he caused bodily injury to Garcia, or for the jury to infer any bad intent from the limited testimony presented at trial testimony. And he further argues that no context was offered as to the origin of Garcia's alleged pain, if any. He asserts that the only assault that was established was that of Garcia herself slapping Martinez and throwing his phone in his face while he slept. Absent knowledge of a specific act by Martinez, he asserts the jury could not have inferred any criminal intent. We disagree.

On review, we find the record here shows that a rational jury could have found beyond a reasonable doubt that Martinez had the requisite intent to commit family violence assault against Garcia. Officers Guzman and Santiago testified to having observed a redness on Garcia in an area near her neck shortly upon their arrival to the residence. Officer Guzman noted that Garcia was distraught and upset while Officer Santiago described Martinez as slightly intoxicated with breath that smelled of alcohol. Santiago testified that while he remained on scene investigating, Martinez denied he had been assaulted even though he himself had made the call to 911. Color photographs taken by the officers were introduced into evidence which showed a redness near Garcia's neck. Garcia reported in a video statement recorded at the scene that Martinez repeatedly pushed her during an argument, that Martinez grabbed her by the neck and pushed her against a door, that she hit her head on the door, that he pushed her onto a bed, that he threw her onto a bed, and that he threw her against a wall. She further reported that Martinez bashed her head into a window and that she felt pain when her head hit the window and a wall. She described having a headache from the altercation. Martinez himself testified that he caught Garcia's hands and pushed her away during their argument. He confirmed that he knew that she fell back and hit the back door.

Even though Garcia's video statement was admitted for impeachment, the jury was permitted to consider it for any purpose given that no limiting instruction was requested under Rule 105(a) at the time the evidence was admitted. *See Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) ("Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be used for all purposes."); TEX. R. EVID. 105(a) (if evidence is admitted for a particular purpose, the court must restrict its use to its proper scope, when requested, and instruct the jury accordingly). On the video recording, Garcia described how she felt pain due to Martinez grabbing her by the neck then throwing her at a door where she hit the back of her head. She also described that she had a lingering headache from the incident. Having described her relationship and the fact that she and Martinez parent a child together, Garcia's recorded statement in which she described a physical altercation with Martinez constituted legally sufficient evidence for a jury to conclude that he committed family violence assault. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(8), 22.01(b); TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, 71.005; *Delgado,* 235 S.W.3d at 251 (without a limiting instruction, admitted evidence may be used for all purposes); *Villyard v State*, No. 01-13-00589-CR, 2014 WL 2048291, at *5 (Tex.App.—Houston [1st Dist.] May 15, 2014, no pet.) (mem. op., not designated for publication) (without limiting instruction, prior inconsistent statement was sufficient to support domestic assault conviction).

The term "bodily injury" is broadly defined by the Texas Penal Code as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8). Moreover, Texas law recognizes that any physical pain amounts to a bodily injury, regardless of how minor. *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012) (citing *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009)). The trier-of-fact may infer physical pain from injuries, because people of common intelligence understand pain and its natural causes. *Garcia,* 367 S.W.3d at 688

(citing *Randolph v. State*, 152 S.W.3d 764, 774 (Tex.App.—Dallas 2004, no pet.)); *In re I.L.*, 389 S.W.3d 445, 455 n.7 (Tex.App.—El Paso 2012, no pet.). Intent can be established through circumstantial evidence. *Wilson v. State*, 391 S.W.3d 131, 135 (Tex.App.—Texarkana 2012, no pet.) (intent for aggravated assault with deadly weapon circumstantially established when defendant gritted teeth, verbally threatened victim, doubled up fist, hit victim on back and head, then grabbed sledgehammer and began walking towards victim) (citing *Laster*, 275 S.W.3d at 524).

Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that a rational jury could have concluded beyond a reasonable doubt that Martinez intentionally, knowingly, or recklessly caused bodily injury to Garcia, a person with whom he had been residing and with whom he had a child. The video statement from Garcia established that Martinez not only grabbed her by the neck and pushed her against a door, he also bashed her head into a window when he threw her against a wall in the bedroom. The responding police officers testified they observed redness on Garcia's neck and further described her as being distraught, upset, and teary eyed upon their arrival on scene. Martinez testified he caught Garcia's hands and pushed her away during their argument. He confirmed that she fell back hitting the back door. We conclude that a rational fact finder could have concluded that the evidence established beyond a reasonable doubt that Garcia experienced pain and bodily injury from a physical assault. *See* TEX. PENAL CODE ANN. § 22.01(b); TEX. FAM. CODE ANN. § 71.005; *Garcia,* 367 S.W.3d at 687–88; *Villyard*, 2014 WL 2048291, at *5.

Although Martinez testified that he did not strike Garcia and she herself claimed she had exaggerated some of what occurred, we give full weight to the trier-of-fact to resolve conflicts in testimony, to consider the evidence in its totality, and to draw reasonable inferences from basic

12

facts to ultimate facts. *Arroyo*, 559 S.W.3d at 487 (quoting *Jackson*, 443 U.S. at 319). When a witness recants earlier testimony, the trier-of-fact has the discretion to believe the original statement or the recantation. *Saldaña v. State*, 287 S.W.3d 43, 60 (Tex.App.—Corpus Christi 2008, pet. ref'd) (citing *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991)). Because the trier-of-fact can base its determination on circumstantial evidence, we are limited to an assessment of whether the inferences drawn are reasonable. *Arroyo*, 559 S.W.3d at 487. We are not permitted to act as a thirteenth juror or make our own assessment of the weight of the evidence. *Id*. Since we consider all evidence irrespective of its admissibility, we conclude that a rational trier-of-fact could have found the essential elements of family violence assault beyond a reasonable doubt. *See id.*; *see also Brooks*, 323 S.W.3d at 896. We overrule Martinez's first issue.

### B. <u>The Admission of Garcia's Video Statement</u>

We next turn to Martinez's second, third, and fourth issues in which he argues that the trial court abused its discretion by permitting the admission of Garcia's video statement. First, in Issue Two, Martinez asserts that the video statement should not have been admitted as extrinsic evidence used to impeach Garcia. Second, in Issue Three, Martinez further argues that the trial court erred in allowing Garcia's video statement to be admitted over a Rule 403 objection. *See* TEX. R. EVID. 403. Third, in Issue Four, Martinez contends the trial court erred when it failed to grant his motion for new trial on the basis that the State used a subterfuge, or straw-man ploy, to get impeachment evidence before the jury as substantive evidence.

### *Standard of Review*

The trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994); *see also Knight v. State,* 457 S.W.3d 192, 204 (Tex.App.—El Paso 2015, pet. ref'd) (citing *Montgomery v. State*, 810 S.W.2d

13

372, 378–79, 391 (Tex. Crim. App. 1990) (op. on reh'g)). We will uphold the trial court's decision to admit evidence if it falls within the zone of reasonable disagreement, and we afford "great discretion" to a trial court in its decision to admit evidence and give corresponding deference to its evidentiary decisions. *See Montgomery,* 810 S.W.2d at 378.

### (1). Predicate for Impeachment

With Issue Two, Martinez presents a two-part argument. First, Martinez asserts that the State failed to adequately confront Garcia with her exact statements, and their context, before seeking to admit her prior inconsistent statements, thus making it impossible for Garcia to be able to admit or deny having made her earlier statements. Martinez claims that questions by the State were confusing and did not establish that Garcia had made prior inconsistent statements. In short, Martinez asserts that the State failed to lay a proper predicate for admission of prior inconsistent statements. Second, Martinez asserts that Garcia unequivocally admitted to making statements regarding being pushed and stating that Martinez was drunk. Given these admissions, Martinez asserts that portions of the video that pertained to consistent statements should not have been admitted. Responding to both arguments, the State first contends that Martinez failed to preserve his claim that Garcia's video statement was improperly admitted based either on the State's failure to lay a proper impeachment predicate or because it was improperly admitted in its entirety. Secondly, the State further asserts that even if error was preserved, nonetheless, Martinez failed to show that the trial court abused its discretion in admitting Garcia's recorded statement given that Garcia failed to unequivocally admit to having made prior inconsistent statements.

As a preliminary matter, we first address whether Martinez preserved his evidentiary objection regarding the admission of Garcia's video statement. *See Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012) (error preservation is a threshold issue because the correctness

14

of trial court rulings must be preserved for appellate review). To preserve a complaint for review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if those grounds are not apparent from the context of the request, objection, or motion. *In Matter of E.H.*, 512 S.W.3d 580, 586 (Tex.App.—El Paso 2017, no pet.) (citing TEX. R. APP. P. 33.1(a)(1)). When exhibits contain both admissible and inadmissible evidence, the objection at trial must specifically refer to the challenged material to apprise the trial court of the exact objection. *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995) (error not preserved where general objection made to entire video recording without specifying challenged material); *see also Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009) (defendant failed to point which portions of audio tape were objectionable). Likewise, arguments on appeal must comport with the objections made at trial. *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016); *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009) (the complaint at trial must be clear enough to permit the trial court to take corrective action at the time when the complaint is made).

On review, we find that Martinez initially lodged a non-specific objection when the State offered the video statement into evidence. Rather than admit the statement, the trial court sustained defense counsel's objection and further commented that the State had not yet proven up the admissibility of the recording. After further testimony from Officer Santiago, Martinez then objected on the grounds of hearsay, relevance, Rule 403, and Rule 404(b). Lastly, Martinez asserted that the State had failed to establish a proper foundation for impeachment purposes. At that point, the trial court informed the parties it would allow the State to recall Garcia to ask her about inconsistencies. *See* TEX. R. EVID. 613; *McGary v. State*, 750 S.W.2d 782, 786 (Tex. Crim. App. 1988) (quoting *Ellingsworth v. State,* 487 S.W.2d 108, 112 (Tex. Crim. App. 1972) (citation

15

omitted) (proper predicate for impeachment by prior inconsistent statement requires witness to be asked if she made contradictory statement at certain place and time, and to certain person)). The State then interrupted Officer Santiago's questioning and recalled Garcia for further questioning. By a series of questions, the State confronted Garcia about certain inconsistencies between her trial testimony and the video recorded statement she made to police on August 1, 2016. After this series, the prosecutor again moved to admit the recording to impeach Garcia.

Martinez objected again based on hearsay and a non-specific objection; but not on inadequate predicate for impeachment nor Rule 403. The trial court overruled the objections and the State thereafter played a redacted copy of the video recording (State's Exhibit 8).[6] Immediately afterward, the State questioned Garcia about whether she continued to see Martinez and if she had met with his attorney prior to testifying. Garcia confirmed that she remained "with [Martinez]." She also testified that she was shown the video recording that morning by his attorney because she asked to see it. When cross-examined by Martinez's counsel, Garcia testified that after she slapped Martinez more than once, he pushed her, and she fell back. Garcia acknowledged that part of what she told officers at the scene was true and part of it was exaggerated.

The general prerequisite to presenting a complaint for appellate review is a showing in the record that (1) the complaint was made to the trial court by a request, objection, or motion that was timely and sufficiently specific to make the trial court aware of the grounds of complaint, and (2) the trial court ruled adversely, or refused to do so despite a request or objection. *Tucker v. State*, 990 S.W.2d 261, 262 (Tex. Crim. App. 1999); *see also* TEX. R. APP. P. 33.1(a)(1) and (a)(2). Specific objections are required so that the trial judge has an opportunity to remove the objection

---

[6] Neither the hearsay ruling, nor issues related to the recording's redaction, are challenged or otherwise addressed by the parties on appeal.

or supply other testimony. *Cacy v. State*, 901 S.W.2d 691, 698 (Tex.App.—El Paso 1995, pet. ref'd).

On review, we find that Martinez waived any claim of error for improper predicate as he failed to object on that basis after the court permitted the State to recall Garcia to question her about her inconsistencies. *Kelso v. State*, 562 S.W.3d 120, 137 (Tex.App.—Texarkana 2018, pet. ref'd); *Reyna v. State*, 168 S.W.3d 173, 177–78 (Tex. Crim. App. 2005); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Because the content of the objection on appeal must comport with the content of the objection at trial, we find that Martinez's hearsay objection at trial did not preserve his appellate claim of improper predicate. *Kelso*, 562 S.W.3d at 137; *Wilson*, 71 S.W.3d at 349. Nonetheless, out of an abundance of caution given that Martinez had earlier objected to improper predicate, we further conclude that the trial court's admission of the recorded statement did not amount to an abuse of discretion. Evidence of prior inconsistent statements may be properly admitted if, after being confronted with the contents, time, and location of such statements, the witness denies or fails to unequivocally admit having made them. *See* TEX. R. EVID. 613(a), (a)(4); *Flowers v. State*, 438 S.W.3d 96, 103 (Tex.App.—Texarkana 2014, pet. ref'd); *Madry v. State*, 200 S.W.3d 766, 770 (Tex.App.—Houston [14th Dist.] 2006, pet. ref'd); *Osteen v. State*, 61 S.W.3d 90, 91 (Tex.App.—Waco 2001, no pet.).

Here, after being confronted with the content, time, and location of prior statements, Garcia denied or failed to unequivocally admit having made several statements that were contained in her recorded video statement. Among other questions, Garcia was asked whether she had previously told police, on August 1, 2016, that: (1) Martinez pushed her against the couch, and that after she slapped him, he grabbed her by the throat and threw her against the door; (2) that Martinez pushed her onto the bed and that when she got up he pushed her against the wall; (3) that she felt pain

17

when Martinez grabbed her by the neck and pushed her against the wall; and (4) that she never threatened Martinez during the incident in question. As to each of these prior statements, Garcia was given an opportunity to explain or unequivocally admit she made prior statements which were inconsistent with her trial testimony. Because Garcia either denied or equivocated about making these statements, the trial court did not err in permitting the State to admit the prior inconsistent statements contained on her video statement. *See Flowers*, 438 S.W.3d at 103; *Madry,* 200 S.W.3d at 770; *Osteen,* 61 S.W.3d at 91. Moreover, once the State offered the recording, Martinez failed to object that portions of the recording were inadmissible. *See Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009); *Ojeda v. State*, No. 08-15-00305-CR, 2017 WL 3405313, at *5 (Tex.App.—El Paso August 9, 2017, pet. ref'd) (not designated for publication) (appellant never directed the trial court to any specific question or answer that should have been deleted). Accordingly, we overrule Martinez's second issue.

### (2). Unfair Prejudice under *Hughes v. State*

In Issue Three, Martinez argues that the trial court erred in allowing Garcia's video statement to be admitted over a Rule 403 objection. Martinez contends that the video should have been excluded based on the circumstances under which it was offered. Martinez asserts that the State could only profit from its admission if it was in fact misused by the jury, i.e., where it was considered not for impeachment purposes but for substantive evidence of a family violence assault. Relying on *Hughes v. State*, 4 S.W.3d 1, 5 (Tex. Crim. App. 1999), Martinez argues "any probative value the impeachment testimony may have [had] is substantially outweighed by its prejudicial effect."

In *Hughes*, the Texas Court of Criminal Appeals squarely addressed a complaint that the State had a called a witness for the sole purpose of impeaching her to place before the jury evidence

18

which was otherwise inadmissible. *Id*. at 3. In *Hughes*, police were called to investigate possible incidents of sexual abuse of two children by their stepfather. *Id.* at 3. The children involved were nine and six years old. *Id*. at 2. To assist with the investigation, caseworkers with Child Protective Services (CPS) interviewed the children along with their mother. *Id*. Subsequently, at a pretrial hearing concerning the admissibility of the outcry made by the nine year old, the child testified that the first person she told about being abused was her mother. *Id*. When the mother testified, however, she denied she had told the two caseworkers that her daughter had reported abuse to her; or, that when she had confronted their stepfather, that he had admitted that the accusations were true. *Id*. at 2-3. Given the circumstances, the State then called one of the caseworkers to the stand who then provided testimony that the girls' mother not only stated in her interview that her older daughter had reported abuse to her, but also that the children's stepfather had confessed when she confronted him about the girls' allegations. *Id*. at 3.

Despite the prior impeachment at pretrial, the State again called the mother to testify at trial in its case-in-chief. She admitted that she had met with the caseworkers, but she denied she had informed them that the girls' stepfather had confessed to sexually abusing her older daughter when she confronted him. *Id*. Once again, the State called the caseworkers to testify about the mother's out of court interview to impeach her trial testimony. *Id*. Defense counsel objected not only based on improper impeachment, but also on the basis that the caseworkers were called to elicit inadmissible hearsay and evidence that was violative of Rule 403. *Id*. The trial court overruled both objections and allowed the testimony to be admitted on the ground that it was offered for purposes of impeaching the mother's testimony. *Id*.

On discretionary review, the Texas Court of Criminal Appeals first confirmed that Texas Rule of Evidence 607 permits the credibility of a witness to be attacked by any party, including

the party calling a witness to testify. *Id*. at 5; TEX. R. EVID. 607. But *Hughes* further established that a party's knowledge that its own witness would testify unfavorably is a factor the trial court must consider when determining whether the evidence is admissible under Rule 403. *Id*.; TEX. R. EVID. 403 (evidence may be excluded if its probative value is substantially outweighed by the danger of, *inter alia*, unfair prejudice, confusion of the issues, or misleading the jury). Reconciling permissible impeachment with a claim of unfair prejudice, *Hughes* clarified that "the State's knowledge that its own witness will testify unfavorably is a factor the trial court must consider when determining whether the evidence is admissible under Rule 403." *Id*.

When applicable to the circumstances, *Hughes* instructs that "a trial court abuses its discretion under Rule 403 when it allows the State to admit impeachment evidence for the primary purpose of placing evidence before the jury that was otherwise inadmissible." *Id.* at 5. Although the State claimed it wanted to elicit evidence from the girls' mother relating to the nine-year-old daughter's outcry and an alleged confession from her stepfather, *Hughes* found that the State had nonetheless failed to offer any explanation for why it expected the mother's testimony to differ at trial from how she had testified at the pretrial hearing. *Id*. at 7. From the circumstances, *Hughes* concluded that the State knew from the prior hearing that the girls' mother would testify inconsistent with the statements she had given to the CPS caseworkers. *Id*. And more importantly, *Hughes* also concluded that the record showed the State had elicited no other favorable testimony from the mother when she was called to testify, thereby suggesting that the State attempted to use her prior inconsistent statements under the guise of impeachment for the primary purpose of placing before the jury evidence which was not otherwise admissible.[7] *Id*. Thus, based on the

---

[7] Rejecting the State's arguments on the substantive admissibility of testimony from the caseworkers, *Hughes* found that any statements made by the mother to the caseworkers concerning her daughter's outcry or an alleged confession by the girls' stepfather would not fall within the parameters of either a statement against interest or an admission of a party opponent due to the caseworkers lack of firsthand knowledge of the two statements. *Id*. at 6 (citing TEX. R.

20

circumstances, *Hughes* concluded that the trial court erred in failing to exclude the impeachment evidence under Rule 403 despite Rule 607 permitting such impeachment. *Id.* ("Due to the highly prejudicial nature of this evidence we conclude any probative value it may have had was substantially outweighed by its prejudicial effect.").

Again, as a preliminary issue, the State asserts that Martinez waived error by never informing the trial court that the State was impermissibly calling Garcia for the sole purpose of impeaching her to place her otherwise inadmissible statement before the jury. In its briefing, the State acknowledges that Martinez objected at trial based on hearsay, Rule 403, and other stated reasons. The State argues, however, that Martinez's trial objection did not comport with his appellate claim of a so-called *Hughes* violation, and thus, Martinez failed to preserve error as to the admission of Garcia's video recording on that basis. Here, we disagree with the State.

The Court of Criminal Appeals advises that litigants need not employ "specific words or technical considerations to avoid forfeiting their complaints." *Vasquez v. State*, 483 S.W.3d 550, 554 (Tex. Crim. App. 2016). To preserve an issue for appeal, a timely objection must be made that states the specific ground of objection, if the specific ground was not apparent from the context. *Buchanan v. State*, 207 S.W.3d 772, 775 (Tex. Crim. App. 2006). A general or imprecise objection may be sufficient to preserve error, but only if the legal basis of the objection is obvious to the court and to opposing counsel. *Id*.

In its briefing, the State acknowledges that Martinez "objected that the recording contained hearsay, that it was irrelevant, that it did not fall 'within the scope of 404.3 [sic] in terms of being unfair and prejudicial,' that, '[t]hey're not 403. They're not 404(b). It's just an open door to all kinds of information,' and that it lacked the proper predicate for its admission as a prior

---

Evid. 803(24) and 801(e)(2)).

21

inconsistent statement." Acknowledging these objections, the State does not challenge Martinez's assertion of a Rule 403 objection, or its timing, but rather, argues that greater specificity was required to preserve a *Hughes*-type complaint. Even though we agree that Martinez failed to formulate his objection as a *Hughes* violation per se, we do not agree that Martinez was required to do so given the absence of any complaint from the State that he in fact made a Rule 403 objection. In *Hughes* itself, the higher court found that defense counsel had properly preserved error by objecting "on the basis that their testimony was improper impeachment, was intended to elicit inadmissible hearsay, and was violative of Rule 403." *Hughes*, 4 S.W.3d at 3. In short, the defendant in *Hughes* preserved error by objecting that the prejudicial nature of the evidence outweighed its probative value pursuant to Rule 403. *Id*. at 7. Given the controlling authority of *Hughes* and the State's lack of dispute about the timing of Martinez's objection, we are not persuaded by the State's position that greater specificity was required from Martinez to preserve a Rule 403 complaint about the admission of Garcia's video recording. Thus, we find that Martinez properly preserved his complaint for our review.

On the merits, we also hold that neither Rule 403 nor *Hughes* would otherwise require the exclusion of the evidence on the record presented in this instance. *See* TEX. R. EVID. 403; *Hughes*, 4 S.W.3d at 7. In determining whether a trial court violated Rule 403 by the admission of evidence, we balance the following factors: (1) the inherent probative value of the evidence and (2) the State's need for the evidence, against any tendency of the evidence to (3) suggest a decision on an improper basis, (4) confuse or distract the jury from the main issues, (5) be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or be needlessly cumulative. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

22

We review the trial court's decision to admit evidence under the abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990); *Knight v. State*, 457 S.W.3d 192, 201–02 (Tex.App.—El Paso 2015, pet. ref'd). Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007).

On this record, we conclude that *Hughes* is distinguishable. First, *Hughes* concluded that the State had failed to offer any explanation for why it expected the girls' mother to testify differently at trial from how she had testified at the pretrial hearing. And second, *Hughes* found that even though the State called the girls' mother at trial, the State elicited no favorable testimony from her, but instead, merely impeached her testimony with her inconsistent statements. Here, in contrast, because the State had no pretrial testimony from Garcia in which she had given inconsistent testimony or otherwise denied that an assault had taken place on the date in question, the State had no reason to expect that Garcia would testify inconsistent from her video recording despite her misgivings about testifying. The record established that the State simply knew and communicated to Martinez by means of a so-called *Brady* notice that Garcia did not approve of the prosecution. To the State, Garcia had expressed her concern that the incident had been blown out of proportion and she refused to comment about whether she felt pain. Nonetheless, Garcia had confirmed that Martinez had placed his hands on her. When the State called Garcia to testify, the questioning elicited favorable testimony to include her statements about having a relationship with Martinez and the fact that they were parenting a child together. Only after she was asked about the incident did Garcia then claim that Martinez never touched her. Given the absence of prior testimony from Garcia and the fact that the State elicited favorable testimony from her, we conclude that *Hughes* is distinguishable. Thus, we conclude that the trial court did not abuse its

23

discretion in overruling Martinez's Rule 403 objection. *See* TEX. R. EVID 403; *but compare Hughes*, 4 S.W.3d at 7 (concluding that lack of favorable testimony suggested the State was attempting to use prior inconsistent statements under the guise of impeachment). Accordingly, we overrule Martinez's third issue.

### (3). The Motion for New Trial

Next we turn to Martinez's fourth issue wherein he asserts that the trial court abused its discretion by not granting a new trial on the basis that the State used a subterfuge or straw-man ploy to get impeachment evidence before the jury as substantive evidence. Martinez asserts he presented additional evidence at the evidentiary hearing on his motion for new trial, of what he claims was already apparent from the trial record, that the State knew that Garcia would not be providing any useful, substantive evidence for the State; but nonetheless, the State called her to testify as a subterfuge to get her prior recorded statement into evidence as an inconsistent statement. Because the State relied on inadmissible evidence, Martinez asserts that the verdict against him was contrary to the law and facts and the trial court erred in denying his motion for new trial.

### *Standard of Review*

A trial court's decision to grant or deny a motion for new trial is reviewed only for an abuse of discretion. *State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013). A trial court may generally grant a new trial, if the defendant: (1) presents a valid, legal claim in his motion, (2) produces evidence or refers to evidence in the trial record that supports his legal claim, and (3) shows prejudice to his substantial rights under the standards of Rule 44.2 of the Texas Rules of Appellate Procedure. *Id.*; s*ee also* TEX. R. APP. P. 21, 44.2. Allegations that a verdict was against the law and the evidence raise a sufficiency challenge and only a sufficiency challenge. *Zalman*,

24

400 S.W.3d at 594. A judge may grant a new trial in the interest of justice, but any such grant must be in accordance with the law. *Id.*

In conducting a review of the trial court's decision, an appellate court should view the evidence in the light most favorable to that decision, defer to the trial court's credibility determinations, and presume that all reasonable fact findings in support of the trial court's ruling have been made. *State v. Thomas,* 428 S.W.3d 99, 104 (Tex. Crim. App. 2014). At the hearing on a motion for new trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Melton v. State,* 987 S.W.2d 72, 75 (Tex.App.—Dallas 1998, no pet.). The trial court may properly consider the interest and bias of any witness and is not required to accept as true testimony of the accused or any defense witness simply because it is uncontradicted. *See id.*

In his motion for new trial, Martinez alleged that "numerous errors affecting [Martinez's] substantial rights occurred, all resulting in a verdict contrary to law and facts." Martinez acknowledged there was no factual dispute over whether he and Garcia had physical contact. But he asserted that the primary fact issue of the case revolved around whether he caused physical pain to Garcia. His motion contended that the only witness who had personal knowledge of whether Garcia experienced physical pain was Garcia herself. He alleged that the State knew or had reason to believe that Garcia would be an adverse witness based not only on communication she had with the State prior to trial but also based on a non-prosecution statement that was disclosed to the State by the defense. Martinez acknowledged that Garcia's video statement included her report to officers that she and Martinez had an altercation from which she felt pain. Asserting that the State was not surprised by Garcia's denial of pain when she was asked at trial, he claimed the State promptly asked her about her prior inconsistent statement. Once again relying on *Hughes* and

Rule 403, Martinez argues that he established that the State impermissibly used a subterfuge or straw-man ploy to get impeachment evidence before the jury as substantive evidence, and thus, he further argues the trial court erred in denying his motion for new trial.

Although prior inconsistent statements are a frequent means of impeaching witnesses, "[a] party should not, however, be permitted to use a straw-man ploy to get impeachment evidence before the jury as substantive evidence." *Miranda v. State*, 813 S.W.2d 724, 735 (Tex.App.—San Antonio 1991, pet. ref'd). As stated earlier, *Hughes* instructs that "a trial court abuses its discretion under Rule 403 when it allows the State to admit impeachment evidence for the primary purpose of placing evidence before the jury that was otherwise inadmissible." *Hughes*, 4 S.W.3d at 5. Because the mother in *Hughes* had testified under oath at a pretrial hearing, the Court found that the State plainly knew from her prior testimony that she would testify inconsistent with her prior statements. *Id*. at 5-6. On review of the trial record of *Hughes*, the Court also found that the State had elicited no other favorable testimony from the mother when she was called to testify, thereby further confirming that the State attempted to use her prior inconsistent statements under the guise of impeachment for the primary purpose of placing before the jury evidence which was not otherwise admissible. *Id*. at 7. Based on these two factors, *Hughes* thus found the trial court had abused its discretion by permitting the State to admit impeachment evidence.

In this case, the trial court conducted an evidentiary hearing concerning the allegations in Martinez's motion for new trial. Once again Garcia testified about the incident with Martinez, but unlike her trial testimony, the scope of the examination expanded to include questions about her interactions with the State prior to her appearance at trial. When asked what she had told police about what happened on the evening of the incident, Garcia testified: "I had told them that we just had an argument and he pushed me and I ended up hitting my head and my back in the back of the

26

window because I stumbled on the couch that was laid out." As to events before trial, she testified that when she was called by the lead prosecutor in September, and asked whether she would testify against Martinez and press charges, she told him no. When the prosecutor asked her about what happened, she answered: "we had an argument, but it was nothing—nothing more than an argument tha[t] anybody else would have and he kept implying that something more happened. He was trying to twist whatever I was stating to make it seem otherwise." Garcia further added, "I told him that we had gotten into a heated argument and I had slapped him before out of, I guess, out of reaction. And that he like tried to push me back, I guess. And I had hit—I think I lost my balance with the couch and then that's when I went back." Although Garcia again described that she hit the back of her head on the back door, she testified at the hearing that she felt no pain. Garcia further testified that she signed a non-prosecution statement before trial. Subsequently, she had further contact with the State in which she claimed that she told another prosecutor she did not want to testify. Garcia described that she later received a subpoena for trial. On the morning of trial, Garcia met again with the State and engaged in another conversation about her testimony. Without objection, she testified that she was told by prosecutors that they believed she had told the truth on the recording but did not believe her when she spoke to them that day.

Viewing the evidence in a light most favorable to the trial court's ruling, we find that the trial court did not abuse its discretion in denying by operation of law Martinez's motion for new trial. As fact finder, the trial court is the sole judge of witness credibility at a hearing on a motion for new trial. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). When the trial court makes no findings of fact regarding the denial of a motion for new trial, we impute implicit factual findings that support the trial judge's ultimate ruling when such implicit factual findings are both reasonable and supported in the record. *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App.

27

2005). In doing so, appellate courts "afford almost total deference" to a trial court's determination of the historical facts of mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

On review, we must defer to the trial court's implied finding that Garcia lacked credibility when she testified that prosecutors told her they did not believe her when she spoke to them before trial. *Holden*, 201 S.W.3d at 763. Although Garcia expressed concerns about testifying, the record fails to establish that the State had reason to know that prior to trial Garcia would deny that Martinez had pushed her, which thereby caused her to hit her head on a back door, nor that she would otherwise lie under oath about whether she had experienced pain from the incident. Garcia's testimony at trial and during the evidentiary hearing nonetheless confirmed elements of the offense including that she had been pushed by Martinez during an argument that became heated. Even in her non-prosecution statement, which is notarized, Garcia did not deny that the incident had occurred but merely expressed her desire for charges to be dropped notwithstanding she understood that the State could prosecute despite her wishes.

Pursuant to Rule 607, the State had a right to call Garcia even as a hostile witness and could thereafter impeach her if warranted. *See* TEX. R. EVID. 607. The question of whether the State knew that Garcia would testify inconsistent with her prior video statement remained a question of fact for the trial court's determination at the new trial hearing. Unlike *Hughes*, Garcia gave no prior testimony under oath at a pretrial hearing wherein she had recanted her prior recorded statements. *See generally Hughes*, 4 S.W.3d at 7. On this record, we cannot conclude that Martinez established there was no legitimate purpose for the State to call Garcia as a witness at trial such that the trial court abused its discretion in permitting the State to impeach her testimony with her prior inconsistent statements. Thus, we hold that Martinez failed to establish that the trial

28

court abused its discretion in denying his motion for new trial. Accordingly, Martinez's fourth issue is overruled.

## C. **The Expert Witness Testimony**

We now turn to Martinez's fifth issue in which he contends the trial court erred when it allowed Stephanie Karr, the Executive Director of the Center Against Sexual and Family Violence, to testify to common victim behaviors, which he argues were not relevant, under the guise of providing expert testimony. Martinez acknowledges that Karr's testimony was tied into the case based on Garcia's denial that she had been assaulted. Characterizing Karr's testimony as that of "[r]ecantation equals cycle of violence" testimony, Martinez claims Karr's testimony was irrelevant given there was no indication of intimidation, prior domestic violence, nor retaliation. The State responds it is well settled that testimony from a domestic violence expert is admissible to help the jury understand recognized behavior in cases where victims' previous statements are later recanted.

We review the admission of expert testimony under an abuse of discretion standard. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). Texas Rule of Evidence 702 permits a witness who is qualified "by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Before admitting testimony under Rule 702, the trial court must be satisfied that (1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact finder in deciding the case. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010). These requirements are commonly referred to more simply as

qualifications, reliability, and relevance. *Id.* Each requirement raises distinct questions and issues, and an objection based on one requirement does not preserve error as to another. *Shaw v. State*, 329 S.W.3d 645, 655-56 (Tex.App.—Houston [14th Dist.] 2010, pet. ref'd). Here, there is no dispute that Martinez challenges Karr's expert testimony solely on the requirement of relevance.

Texas courts have recognized testimony pertaining to the behavior of abuse victims or the dynamics of domestic violence as an appropriate subject for expert testimony. *Brewer v. State*, 370 S.W.3d 471, 474 (Tex.App.—Amarillo 2012, no pet.) (expert permitted to testify about victim's delayed reporting in family violence case); *Dixon v. State*, 244 S.W.3d 472, 480 (Tex.App.—Houston [14th Dist.] 2007, pet. ref'd) (officer trained and experienced in family violence permitted to testify as expert on behavior of victim of family violence); *see also Fielder v. State,* 756 S.W.2d 309, 320 (Tex. Crim. App. 1988) (domestic abuse is a subject upon which expert testimony may be helpful to the fact finder in deciding a case). Expert testimony explaining patterns of behavior typical of spousal abuse to include a victim's recantation of an earlier accusation reported to law enforcement is useful to a jury in discerning credibility and to explain a topic on which the average lay person may not have familiarity. *Scugoza v. State*, 949 S.W.2d 360, 363 (Tex.App.—San Antonio 1997, no pet.).

Martinez argues that without evidence of fear or intimidation, Karr's testimony, which explained Garcia's denial of being assaulted at trial in the context of family violence, amounted to mere speculation of a cycle of violence. Martinez asserts there was no evidence that Garcia and Martinez had been involved in any kind of domestic violence relationship, much less a domestic violence relationship over a long period of time. Relying on *Williams v. State*, Martinez argues that the State needed to connect Karr's generic testimony to specific facts of the case. *Williams v. State*, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994). In *Williams*, a case not involving family

30

violence testimony, the Court found that a trial court had properly excluded psychological profile testimony based on its conclusory nature and the fact that the expert did not specifically apply the profile testimony to actual characteristics possessed by the defendant. *Id.*

Here, we are not persuaded that Karr's expert testimony was prohibited without an express indication that Garcia's denial of events at trial was due to fear, intimidation, or being in an abusive relationship for a period of a certain length. Rule 702 permits an expert with specialized knowledge to testify about theories, facts, and data used in his or her area of expertise. *Osbourn v. State*, 92 S.W.3d 531, 536 (Tex. Crim. App. 2002). Karr testified she had extensive training in the field of domestic violence and had worked for 18 years at the Center Against Sexual and Family Violence. Along with other courts, we have recognized that evidence is admissible that explains the behavioral signs commonly recognized in the field of family violence exhibited by some survivors of family violence. *See Mendoza v. State*, No. 08-13-00293-CR, 2015 WL 5999596, at *5 (Tex.App.—El Paso Oct. 14, 2015, pet. ref'd) (finding no abuse of discretion in admitting expert testimony that was relevant to understanding why complaining witness recanted and denied abusive acts); *Scugoza*, 949 S.W.2d at 363 (permitting testimony that the behavior of a hypothetical woman denying her initial accusation of abuse was consistent with the behavior of the typical battered woman); *Brewer*, 370 S.W.3d at 474 (expert permitted to testify about victim's delay in calling police).

Karr testified that the reaction of victims of assault family violence, when asked to testify against their aggressor, "can range from denial that the event ever took place, protection of the aggressor, as well as an unwillingness to proceed with prosecution. So there's a wide range of reaction. Each individual is unique." Karr explained that survivors can be intimidated by their aggressor; and to protect themselves and other family members, they may choose to restate the

31

facts. Given that Karr testified that an unwillingness to testify against an aggressor is inherent to the range of behavior consistent of family violence assault, we find that Karr's testimony explaining the context of Garcia's unwillingness to prosecute Martinez, with whom she shared a relationship and child, was relevant in describing a topic on which the average lay person could not be expected to be familiar. *See Scugoza*, 949 S.W.2d at 363; *Mendoza*, 2015 WL 5999596, at *5. Thus, we hold that the trial court did not abuse its discretion in admitting Karr's expert testimony. Accordingly, Martinez's fifth issue is overruled.

## D. The Jury Instruction on Self-Defense

In his sixth and final issue, Martinez contends that the trial court committed egregious error by failing to properly instruct the jury on self-defense. Martinez contends that the trial court failed to instruct the jury that it must acquit if it had a reasonable doubt that Martinez acted in self-defense. The State rebuts Martinez's contention asserting that the trial judge did in fact properly instruct the jury.

Where a jury charge is timely objected to at trial, the reviewing court must reverse, if the court finds some harm to the defendant. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If the defendant failed to object at trial, reversal is required where egregious harm is found so that the defendant did not receive a fair and impartial trial. *Id.* The jury charge must include an application section and apply the charge to the particular facts of the case. *Id.* at 554 (citing *Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998)) (further citation omitted); *see Fennell v. State*, 424 S.W.2d 631, 633 (Tex. Crim. App. 1968) (jury charge must include adequate, comprehensive, complete, and unrestricted instruction on self-defense). Jurors should be properly instructed as to what circumstances would require conviction and what circumstances require acquittal. *Mendez*,

32

545 S.W.3d at 555 (quoting *Gray v. State*, 152 S.W.3d 125, 128 (Tex. Crim. App. 2004)).

At trial, the jury charge read, in pertinent part, as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of August 2016, in El Paso County, State of Texas, the Defendant, Jose Martinez, did then and there intentionally, knowingly, or recklessly cause bodily injury to Crystal Garcia, by

A) Grabbing Crystal Garcia's neck with Defendant's hand or,

B) Pushing Crystal Garcia's body with Defendant's hand,

then you must next decide whether the State has proved that the Defendant's conduct was not justified by self-defense.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the Defendant not guilty.

Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. The use of force against another is not justified in response to verbal provocation alone.

A person is not required to retreat before using non-deadly force necessary to repel or defend against actual or threatened unlawful force.

In determining whether an actor reasonably believed that the use of force was necessary, a finder of fact may not consider whether the actor failed to retreat.

Now, if you find beyond a reasonable doubt that on or about August 1st, 2016, in El Paso County, Texas, the Defendant intentionally, knowingly, or recklessly caused bodily injury to Crystal Garcia, and further[,] if you find beyond a reasonable doubt that [Martinez] did not do so in self-defense, then you will find the Defendant guilty.

Taken as a whole, we find that the jury charge adequately informed the jury as to the nature of Martinez's self-defense claim. In particular, the jury was instructed that it had to consider whether the State proved that Martinez was not justified by self-defense, and that, if it had reasonable doubt as to whether Martinez acted in self-defense, it must find Martinez not guilty of the charged offense. Such a charge sufficiently provides that, when evidence of a justification

33

defense is admitted and submitted to the jury, the jury has been informed that a reasonable doubt on the self-defense issue will require that the defendant be acquitted. *See* TEX. PENAL CODE ANN. § 2.03; *Ryser v. State*, 453 S.W.3d 17, 30 (Tex.App.—Houston [1st Dist.] 2014, pet. ref'd). This language fixes the burden of proof on the State to prove every element of the offense, including disproving self-defense. *Ryser*, 453 S.W.3d at 30 (citing *Assiter v. State,* 58 S.W.3d 743, 746 n.3 (Tex.App.—Amarillo 2000, no pet.)). A jury verdict of guilty implicitly rejects the defendant's self-defense claim. *Ryser*, 453 S.W.3d at 30 (citing *Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)). On review, we conclude that the jury in the instant matter was sufficiently charged by the trial court to protect Martinez from error, and the guilty verdict implicitly rejected Martinez's claim of self-defense. Accordingly, we overrule Martinez's sixth issue.

## II.

As a final matter, we note that the trial court certified Martinez's right to appeal in this case, but the certification does not bear Martinez's signature indicating that he was informed of his rights to appeal and to file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX. R. APP. P. 25.2(d). We thus find that the certification is defective and has not been corrected either by Martinez's attorney, or the trial court.

To remedy this defect, the Court ORDERS Martinez's attorney, pursuant to TEX. R. APP. P. 48.4, to send Martinez a copy of this opinion and this Court's judgment, to notify Martinez of his right to file a pro se petition for discretionary review, and to inform Martinez of the applicable deadlines. *See* TEX. R. APP. P. 48.4, 68. Martinez's attorney is further ORDERED, to comply with all the requirements of TEX. R. APP. P. 48.4.

## CONCLUSION

Having overruled all six of Martinez's issues, we affirm the judgment of the trial court.

GINA M. PALAFOX, Justice

August 30, 2019

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)